**STATE of Tennessee, Appellee,**

v.

**Marilyn R. CARTER, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 17, 1994.

Denise S. Terry, Morristown, for appellant.

Sharon S. Selby, Asst. Atty. Gen., Crim. Justice Div., Nashville, for State of Tenn.

## OPINION

WALTER C. KURTZ, Special Judge.*

The defendant, Marilyn Carter, appeals as of right from her conviction for driving under the influence. The defendant received a sentence of eleven (11) months and twenty nine (29) days to be suspended after service of sixty (60) days, along with a Five Hundred Dollar ($500.00) fine.

Two issues are presented for review: (1) Did the trial court properly instruct the jury, and (2) was the evidence sufficient to support the conviction? We reverse on the grounds that the evidence is insufficient to support the conviction. The reversal on the sufficiency of the evidence pretermits the jury instruction issue.

The defendant was arrested on March 23, 1993. Officer James Cobble testified that he was dispatched to Dr. Crossley's parking lot to investigate a potentially intoxicated driver.

When Officer Cobble arrived, he observed the defendant attempting to start her vehicle by turning the ignition switch. Officer Cobble did not hear the engine start, did not observe the defendant driving the vehicle, and did not check to see if the vehicle's engine was warm.

Upon stepping out of the vehicle, the defendant was unsteady on her feet. She had slurred speech, appeared confused and shaky; and her pupils were dilated. Officer Cobble asked the defendant if she had been drinking or taking any medication. The defendant replied that she had not been drinking but was taking prescription drugs. Officer Cobble then gave the defendant a horizontal gaze nystagmus test, which she passed. Neither Officer Cobble nor Officer Todd Davidson gave the defendant any further field sobriety tests because they did not believe the defendant could perform them.

After placing the defendant under arrest, Officer Cobble asked the defendant to consent to a blood test. The defendant signed the consent form, and blood was subsequently drawn. Several substances were found in the defendant's blood system: caffeine, meprobamate, carisoprodol, fluoxetine, and chlor-trimeton.

Todd Davidson was the second officer to arrive at the parking lot. Officer Davidson testified that the defendant's ability to operate a vehicle in a safe manner was impaired. However, Officer Davidson did not witness the defendant drive the vehicle.

The defendant testified that she had taken "chlor-trimeton," an over the counter sinus medication, the night before her arrest. On the morning of March 23, 1993, the defendant took her children to Dr. Crossley's office, arriving at approximately 9:30 a.m. The defendant had prescriptions for prozac and for soma, a muscle relaxer. Although she did not take a prozac that morning, she did take a soma at about 10:30 a.m. The defendant's children finished at the dentist at 12:30 p.m. The defendant put the keys in the ignition and attempted to start the vehi-

---

* Judge Kurtz was sitting by designation with the Court of Criminal Appeals at Knoxville by order of the Chief Justice of the Supreme Court dated April 18, 1994.

cle, but was unable to do so. At that point, Officer Cobble arrived at the parking lot.

James Srock, an automobile mechanic for the previous thirteen (13) years, testified that he had repaired the defendant's vehicle in the past. After the defendant's arrest, the defendant's husband called Mr. Srock to the scene to examine the vehicle. During his inspection, Mr. Srock determined that the battery was dead and that the vehicle could not be jump started. Next, Mr. Srock ascertained that the vehicle would not start because the choke was stuck. Mr. Srock stated that the vehicle would start only if the carburetor were replaced or taken apart and thoroughly cleaned.

A jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). A conviction may only be set aside when the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn.R.App.P. 13(e).

The court holds that the evidence is insufficient to establish the offense of driving under the influence. T.C.A. § 55–10–401 states in pertinent part:

> (a) It is unlawful for any person or persons to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state of Tennessee, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

There is no evidence in this case that the defendant was driving the vehicle. Accordingly, the only issue before the court is whether there was sufficient evidence that the defendant had physical control of the vehicle. It is undisputed that the defendant was unable to start the vehicle. Furthermore, Mr. Srock's uncontradicted testimony indicated that it would not be possible to start the vehicle without either replacing or taking apart and cleaning the carburetor.

In *State v. Lawrence*, 849 S.W.2d 761 (Tenn.1993), the Supreme Court adopted a totality of the circumstances test to ascertain a defendant's physical control of a vehicle pursuant to T.C.A. § 55–10–401(a). The fact finder may take all the circumstances of the specific situation into account:

> [T]he location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

*Lawrence*, at 765.

In *Lawrence*, the defendant's truck was stopped in the road, and the defendant was asleep in the driver's seat with the vehicle's keys in his pocket. In holding that the defendant was in physical control of his vehicle, the Supreme Court noted that "[t]he defendant could have at any time started the engine and driven away. From a mechanical standpoint, the vehicle was capable of being immediately placed in motion to become a menace to the public and to its drunken operator." *Lawrence* at 765.

In the present case, the opposite situation exists. The evidence indicates that it was mechanically impossible for the defendant's vehicle to be started. We note that in *Lawrence*, the Supreme Court described a situation where a conviction would be improper if "an intoxicated person [was] sitting in the driver's seat of an automobile having no tires and mounted on blocks." *Lawrence* at 765. The situation referred to by the court in *Lawrence* is analogous to the present case. The defendant's vehicle could not be driven under its own power since it would not start.

The State cites the case of *Hester v. State,* 196 Tenn. 680, 270 S.W.2d 321 (1953) in support of its position. In *Hester,* the Court upheld the conviction of a defendant who was found to be behind the wheel of his automobile while being pushed along a public road by another vehicle. While it appears that conviction could have been upheld under the "driving" portion of the statute, the court chose to uphold the conviction because the defendant was in "physical control" of his automobile. The court stated:

> The statute was designed to prevent drunken persons (those under the influence of an intoxicant or drug) from being in control of an instrument that is as dangerous as an automobile might be to others upon the public highway, at a time when the operator was so inebriated that he was incapable of exercising the mental forethought and actions that are required of one operating an automobile under the present traffic conditions. We are of the opinion that even though the car be not operated under its own power, the highway hazard to others lawfully using the highway is as great where an inebriated person is in control of the car as though it were being operated under its own motive power. The nature of the motive power is not an element of the statute and it seems unnecessary for us to add such to this statutory offense.

> . . . . . .

> The plaintiff in error was in physical control of his automobile in this case. Of course the speed of the car could not be obtained by its own motive power at the time of the arrest when the motor was not in operation but nevertheless his control was as complete so far as the guidance of the automobile was concerned as though it was in perfect running condition. Thus obviously one in an inebriated condition being at the wheel of an automobile which was being pushed on the highway could suddenly veer it one way or the other and cause just as serious if not a more serious wreck than one which was running under its own power. Thus it seems to us that the test is, was the person in control of his automobile in an inebriated condition, if he was then he is guilty under the statute whether the motor of the car was running or not so long as the car was on the highway and might cause injury, death and damage to others.

*Id.* at 681–83.

As *Hester* indicates, the danger to be alleviated by the statute is that of a driver who either is driving or has driven while under the influence or because of physical control over the vehicle, appears he or she will drive in the foreseeable future while still under the influence. In the instant case, there is no support in the record to indicate that the vehicle could be driven under its own power, nor is there any indication that the vehicle was pushed or would be pushed by another person or vehicle while in the physical control of this defendant.

The court holds that under the totality of the circumstances, the evidence to convict the defendant of driving under the influence was insufficient. The conviction is reversed and the case dismissed.

SCOTT, P.J., and WELLES, J., concur.