IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY 1999 SESSION

FILED

June 2, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 03C01-9806-CC-00213 |
| Appellee, | ) | |
| | ) | Blount County |
| v. | ) | |
| | ) | Honorable D. Kelly Thomas, Jr., Judge |
| CHARLES R. BROWN, | ) | |
| | ) | (DUI) |
| Appellant. | ) | |

FOR THE APPELLANT:

Charles Dungan
307 College Street
Maryville, TN 37804

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

R. Stephen Jobe
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Michael L. Flynn
District Attorney General
363 Court Street
Maryville, TN 37804-5906

Charles Carpenter
Assistant District Attorney General
363 Court Street
Maryville, TN 37804-5906

William R. Reed
Assistant District Attorney General
363 Court Street
Maryville, TN 37804-5906

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

**O P I N I O N**

The appellant, Charles R. Brown, appeals as of right from his conviction for driving under the influence of an intoxicant (DUI) by a Blount County jury. The defendant was sentenced to eleven months and twenty-nine days. He was ordered to serve forty-eight hours in the county jail before being placed on supervised probation for eleven months and twenty-seven days. The defendant was also fined $350. In this direct appeal, the defendant presents two issues: (1) whether the evidence was sufficient to support the finding of guilt beyond a reasonable doubt; and (2) whether the trial court erred in charging the jury.

Upon reviewing the record in this cause, the briefs of the parties, and appropriate law, we affirm the trial court's judgment.

## BACKGROUND

At approximately midnight on January 24, 1996, the Maryville Police Department received a disturbance call from the Winn-Dixie Supermarket. Officer Christopher C. Tuck, in response to the call, observed a 1990 maroon Cadillac parked in the fire lane in front of the supermarket. Officer Tuck observed the defendant sitting behind the steering wheel of the Cadillac. The defendant was the only person in the car. Upon approaching the defendant, Officer Tuck detected a very strong odor of alcohol on the defendant's breath. The defendant's speech was slurred, and he appeared to be impaired. The keys were in the ignition of the automobile. Officer Tuck found one empty bottle of alcohol and one sealed bottle of alcohol in the Cadillac.

The defendant performed three field sobriety tests, of which he failed two. He was arrested for DUI and taken to the Blount County Memorial Hospital for a blood-alcohol test. The defendant consented to the test, which was forwarded to the Tennessee Bureau of Investigation Crime Laboratory for analysis. Officer Tuck identified a Crime Laboratory report which revealed the defendant had .22 percent ethyl alcohol in his blood.

2

Shelby Jean Brown, the defendant's mother, testified that her son, who had not been drinking, borrowed her Cadillac on the day in question. Mrs. Brown stated that her car had a low fuel indicator light that flashed when the tank was low in gas. She did not allow the gas tank to empty below halfway before refilling.

Debbie Brown, the defendant's wife, testified that she arrived at her mother-in-law's house after work to pick up their son. The defendant was already there. Mrs. Brown had taken their family van to work, so her husband had borrowed his mother's car. Mrs. Brown left around 9:00 p.m. At approximately 11:20 p.m., Mrs. Brown received a phone call from her husband, who had run out of gas at the Winn-Dixie and needed a ride home. Due to the lateness of the hour, Mrs. Brown called her father-in-law, Charles E. Brown. He agreed to go and get his son. When her husband called again, Mrs. Brown advised him that his father was on the way. Mrs. Brown testified that, during the first phone call, her husband sounded normal, but, upon the second call, she suspected he had been drinking.

Charles E. Brown, the defendant's father, testified that he received a phone call from his daughter-in-law to pick up his son, who had run out of gas at the Winn-Dixie. Upon arrival, Mr. Brown saw the car, but did not see his son. Mr. Brown opened the car door with an extra set of keys, turned on the ignition switch, and observed the low fuel light blinking. Two gas stations in the nearby area were closed, so Mr. Brown left the Cadillac and went home. Mr. Brown later learned his son had been arrested. The next morning he went to the Winn-Dixie to get the Cadillac. Mr. Brown drove the car about one-half of a block to obtain some gas. Mr. Brown agreed that, by pushing the right button, the car's computer would reflect the distance to empty, but he did not do so.

The defendant testified that he was a self-employed taxi operator and ran a van service to the local airport. On January 24, 1996, the defendant borrowed his mother's Cadillac, since his wife had taken their van to work. At 11:20 p.m. on the night in question, the defendant left his mother's home for the Winn-Dixie. He took a bottle of champagne and a bottle of vodka with him. As the defendant was leaving his mother's home, the fuel

3

indicator was on "L," but was not blinking. As the defendant approached Niles Ferry Road, the light started blinking, indicating that "it's getting ready to run out of gas." The defendant stopped in front of the Winn-Dixie and called his wife. While seated in the car waiting for his wife, the defendant poured some vodka into a thirty-two ounce coke and started drinking. The defendant testified, "[I]t was just cold and . . . I didn't know . . . how long I was going to have to wait." While waiting, the defendant went inside the Winn-Dixie, where he had a misunderstanding with a cashier over a coupon. The defendant returned to his car and continued drinking vodka. The defendant testified he was talking to his wife when the police arrived. The defendant acknowledged that he could have started the car at anytime, but he had no intention of doing so. The defendant also acknowledged that, if the Cadillac had had gas, it could have been driven that night, and there was nothing mechanically wrong with the car.

## APPELLATE ISSUES

## A.

## Sufficiency of Evidence

The defendant contends there was no evidence that he consumed any alcohol prior to his arrival at the Winn-Dixie. He further contends that the evidence supports the fact that he became intoxicated after he parked the car and stopped the engine after running out of gas. Thus, the defendant argues that he was not in physical control of the vehicle.

When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilty unless the facts in the record and inferences which may be drawn from it are sufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13 (e); *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982); *State v. Brewer,* 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Initially, a defendant is cloaked with the presumption of innocence. *Tuggle,* 639 S.W.2d at 914. However, a jury conviction removes the presumption of innocence and replaces it with one of guilt, so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence

4

is insufficient to support the conviction. *Id.*

In determining the sufficiency of evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Instead, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994). This rule is applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Clearly the evidence supports the jury's finding that the defendant was in physical control of his mother's car. The morning after the defendant's arrest, the defendant's father drove the Cadillac to a nearby station to obtain gas. The defendant acknowledged that the car was capable of being driven and that he had the keys and was sitting behind the wheel of the car when he was observed by the arresting officer. Although the car's fuel indicator light was blinking, the car did have some gas and, thus, was moveable. There is no merit to this issue.

**B.**

**Erroneous Jury Instruction**

The defendant contends the trial court erred in defining physical control for the jury by failing to include the language "the extent to which it appears that the defendant will drive in the foreseeable future." The state counters that the trial court properly instructed the jury regarding "physical control."

The defendant complains that the jury was deprived of the opportunity to determine

if the defendant was likely to drive before his arrest, citing *State v. Carter,* 889 S.W.2d 231, 234 (Tenn. Crim. App. 1994). In *Carter,* the defendant was arrested for DUI in a parking lot. The defendant had taken some medications, which indicated the defendant was under the influence. No one saw the defendant driving the automobile, thus requiring a determination to be made as to whether the defendant was in "physical control" of the vehicle under the definition of the DUI statute. In reversing the defendant's conviction, this Court, citing *Hester v. State,* 196 Tenn. 680, 270 S.W.2d 321 (Tenn. 1953), stated:

> The danger to be alleviated by the statute is that of a driver who either is driving or has driven while under the influence or because of physical control over the vehicle, appears he or she will drive in the foreseeable future while still under the influence. In the instant case, there is no support in the record to indicate that the vehicle could be driven under its own power. . . .

*Carter*, 889 S.W.2d at 234.

The trial court in the present case denied the defendant's special request to enlarge on the definition of "physical control" as set forth in *State v. Lawrence,* 849 S.W.2d 761, 765 (Tenn. 1993). The trial court, in considering *Hester* and *Carter,* held that the dicta, "because of physical control of the vehicle appears he or she will drive in the foreseeable future while still under the influence," did not require additional proof that a person intended to drive in the foreseeable future or did not intend to drive.

The trial court instructed the jury on the following definition of "physical control":

> For a person to be in physical control of a motor vehicle, a person must be present, at or near a motor vehicle and must have the ability to determine whether or not such motor vehicle is moved and if so, to where it is moved. It is not necessary that the motor of a motor vehicle be running or capable of starting for a person to be in physical control of such vehicle. A person may be in physical control of a motor vehicle without driving, starting or moving the motor vehicle.
>
> When the issue is the extent of the defendant's activity necessary to constitute physical control you should take into account all the circumstances. That is the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability but for his intoxication to direct the use or non-use of the

6

vehicle, and the extent to which the vehicle itself is capable of being operated or moved under its own power.

We find this jury instruction to be a correct statement of the law. *Lawrence,* 849 S.W.2d at 765. We agree with the state that the facts of the present case are markedly different from those recited in *Carter.* Thus, the defendant's requested instruction is not applicable to this case. To give this additional instruction in physical control cases, the state would be compelled to prove an intent on the part of a defendant. The state is not required to show intent. Besides, who knows what lurks in the mind of a person with a blood-alcohol content of .22 percent?

In *State v. Turner,* 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996), *per. app. denied* (Tenn. 1997), Judge Hayes, speaking for this Court, stated:

> In determining the application of Tenn. Code Ann. § 39-11-102(b) and 39-11-301(b) and (c) [mens rea] to the driving while intoxicated statute, we note that this court has previously observed that there is no culpable mental state required for guilt of driving under the influence. *State v. Fiorito,* No. 03C01-9401-CR-00032, 1995 WL 695031 (Tenn. Crim. App. at Knoxville, November 27, 1995). *See also State v. Mabe,* No. 03C01-9402-CR-00051, 1994 WL 583210 (Tenn. Crim. App. at Knoxville, October 25, 1994).

The special requested instruction of the defendant is contrary to the established law in Tennessee in that it would require the state to prove that the defendant had a specific intent to drive the vehicle. We find the trial court's jury instruction on physical control proper under the facts of this case. There is no merit to this issue.

The trial court's judgment is affirmed.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:

7

_____
JOSEPH M. TIPTON, JUDGE


_____
JERRY L. SMITH, JUDGE