STATE of Tennessee

v.

Rodney M. BUTLER.

Supreme Court of Tennessee,
at Jackson.

April 9, 2003 Session.

June 24, 2003.

Nathan B. Pride, Jackson, Tennessee, for the appellant, Rodney M. Butler.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; J. Ross Dyer, Assistant Attorney General; Jerry Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, and JANICE M. HOLDER, JJ., joined. ADOLPHO A. BIRCH, J., filed a concurring and dissenting opinion.

The defendant, Rodney M. Butler, was convicted in the Criminal Court for Madison County of: 1) unlawfully driving or being in physical control of a motor vehicle while under the influence of an intoxicant; 2) unlawfully driving or being in physical control of a motor vehicle with a blood or breath alcohol concentration of .10% or more; and 3) driving under the influence, fourth offense. At the sentencing hearing, after merging the first two counts into count three, the trial judge reduced the $15,000 fine assessed by the jury to $10,000 and sentenced Butler to four years in the Department of Correction as a Range II offender. We granted this appeal to determine whether the evidence was sufficient to support the defendant's

convictions and also to determine whether the defendant was properly sentenced. After an examination of the facts and the law pertinent to the issues, we hold that the evidence was sufficient to support the defendant's convictions. Additionally, we hold that the defendant's sentence was proper.

## FACTUAL BACKGROUND

Shortly before midnight on March 18, 2000, Madison County Deputy Dan Owen was off duty and working as a security guard at a Wal–Mart Supercenter in Jackson, Tennessee when a customer informed him that a man "was wandering around the parking lot [who] appeared to be intoxicated." Deputy Owen confronted the defendant, Rodney M. Butler, in the parking lot approximately fifty feet from the entrance to the store and approximately one hundred yards from the defendant's motorcycle. The defendant, who was carrying a sparkplug and a sparkplug wrench, explained to Deputy Owen that he had driven to the store to get a part for his motorcycle. Deputy Owen testified that the defendant appeared to be intoxicated. He also noticed that the defendant had a bottle protruding from his jacket pocket.

Deputy Owen escorted the defendant into the Wal–Mart and conducted four field sobriety tests. After witnessing the defendant perform poorly on three of the tests, Deputy Owen placed the defendant under arrest and discovered that the half-empty bottle contained tequila. Deputies Ashley Johnson and Tommy Ferguson were summoned to transport Butler to the police station in order to conduct a breathalyzer test. Deputy Owens testified that after the defendant was transported to the police station, he recovered the defendant's

helmet from the store's automotive department. He also stated that he never actually witnessed the defendant on the motorcycle.

Upon arriving at the police station, the defendant consented to the breathalyzer test, which indicated that the defendant's breath alcohol concentration was .19%. In addition to offering testimony on the administration of the breathalyzer test, Officer Johnson testified that the defendant was unsteady on his feet and had slurred speech. Officer Ferguson also testified that the defendant was unsteady on his feet and added that Butler was belligerent during the transport from the Wal–Mart store to the police station.

Janae Owen,[1] the State's final witness, testified that she witnessed Deputy Owen bring Butler into the store from the parking lot. She testified that the defendant told Deputy Owen that he had driven to Wal–Mart to get a sparkplug for his motorcycle. She also stated that the defendant was staggering around and "just reeked with the smell of alcohol."

In his own defense, Butler testified that the purpose of his trip to Wal–Mart was to get some food because he had not eaten that day. He stated that his motorcycle began to sputter during the trip and that it stopped working when he got to Wal–Mart. Butler stated that he had stopped at the liquor store, where he purchased the bottle of tequila, prior to going to Wal–Mart. After arriving at the Wal–Mart store, the defendant testified that he could not decide what he wanted to eat so he began drinking the tequila while browsing through the automotive department. He also stated that he thought that the tequila would help him cope with a painful too-

1. Mrs. Owen is the wife of Deputy Owen although at the time of the defendant's arrest on March 18, 2000 they were not yet married.

Mrs. Owen testified that she was at Wal–Mart to bring Deputy Owen dinner.

thache. The defendant testified that he was not having success finding a matching sparkplug for his motorcycle in the sparkplug books, so he decided to remove the sparkplug from his motorcycle hoping to match it with one for sale inside the store. Butler testified that when he removed the sparkplug from his motorcycle and attempted to walk back into the store, he was confronted by Deputy Owen. On cross-examination, Butler admitted having mechanical trouble with his motorcycle earlier that day and not merely when he arrived at Wal–Mart.

Additionally, Mr. Carroll Henderson, a mechanic, testified that a few days after the motorcycle was towed from the Wal–Mart parking lot to Gene's Tire and Wrecker, he helped the defendant render the motorcycle operational. He testified that after replacing the sparkplug and draining the cylinder, which was flooded with gas, the motorcycle promptly began to run and was driven off by the defendant. Mr. Henderson was uncertain how the flooding occurred in the defendant's motorcycle, but stated that it could have been a result of attempts to start the motorcycle without the sparkplug.

At the conclusion of the proof, the trial court instructed the jury on the offenses of driving or being in physical control of a motor vehicle under the influence of an intoxicant, *see* Tennessee Code Annotated section 55–10–401(a)(1) (1998 & Supp. 2002), and also driving or being in physical control of a motor vehicle with a blood or breath alcohol concentration of .10 or greater, *see* Tennessee Code Annotated section 55–10–401(a)(2) (1998 & Supp. 2002). Following deliberation, the jury returned guilty verdicts on both counts. The jury then heard evidence of the defendant's three prior convictions in Tennessee for driving under the influence. Following further deliberation, the jury found the defendant guilty of driving under the influence, fourth offense, *see* Tennessee Code Annotated section 55–10–403(a)(1) (1998 & Supp.2002), and imposed a fine of $15,000.

At the sentencing hearing, the trial court sentenced the defendant to four years in the Department of Correction as a Range II offender and reduced the jury-assessed fine from $15,000 to $10,000. On appeal, the Court of Criminal Appeals affirmed both the defendant's conviction and his sentence and fine. For the reasons stated herein, we affirm the Court of Criminal Appeals and hold that the evidence was sufficient to support the defendant's convictions. We also hold that the defendant was properly sentenced and fined.

## STANDARD OF REVIEW

The standard for appellate review when a criminal defendant challenges the sufficiency of the evidence is whether, "considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Reid,* 91 S.W.3d 247, 276 (Tenn.2002); *see also* Tenn. R.App. P. 13(e); *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Smith,* 24 S.W.3d 274, 278 (Tenn.2000). When reviewing the evidence, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *Smith,* 24 S.W.3d at 279. Moreover, this Court does not substitute its own "inferences drawn from circumstantial evidence for those drawn by the trier of fact." *Reid,* 91 S.W.3d at 277.

In addition, the defendant challenges his sentence and fine as being overly harsh. In reviewing such a challenge, the task of the appellate court is to conduct a *de novo* review with a presumption

that the sentence imposed by the lower court was correct. Tenn.Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

Tennessee Code Annotated section 55-10-401(a) (1998 & Supp.2002) ("section 55-10-401(a)") states:

It is unlawful for any person to *drive* or to be *in physical control* of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, *or while on the premises of any shopping center*, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or,

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.[2]

(Emphasis added). For the jury to convict the defendant of driving under the influence of an intoxicant, it had to find that the State proved beyond a reasonable doubt that the defendant drove or was in physical control of a motor vehicle, while under the influence of an intoxicant or with a blood or breath alcohol concentration of .10% or higher, and while the defendant was located in a prescribed area.

According to Tennessee Code Annotated section 55-8-101(31) (1998 & Supp.2002), the term "motorcycle" is included in the definition of "motor vehicle." Additionally, a Wal-Mart Supercenter would be considered a "shopping center" for purposes of section 55-10-401(a). Moreover, the proof is undisputed that the defendant was intoxicated at the time of his arrest. When he was approached by Deputy Owen, there was a strong odor of alcohol on the defendant's breath, as well as a half-empty bottle of tequila in the defendant's jacket pocket. Subsequently, the defendant performed poorly on three field sobriety tests. Moreover, Officers Johnson and Ferguson testified that the defendant had slurred speech, was unsteady on his feet, and had a breath alcohol concentration of .19%. By his own admission, the defendant drank the tequila shortly before being arrested. Thus, the jury could reasonably find both that the defendant was intoxicated at the time of his arrest and that his breath alcohol concentration was .10% or higher.

In contending that the evidence is insufficient to support his convictions, the defendant argues that the State failed to prove beyond a reasonable doubt that he drove or was in physical control of his motorcycle while intoxicated. Conversely, the State maintains that the evidence demonstrated that the defendant was in physical control of the vehicle, based upon this Court's decision in *State v. Lawrence*, 849 S.W.2d 761 (Tenn.1993). After reviewing the record, we conclude that the evidence was sufficient to support a conviction for driving under the influence based either on the theory that the defendant was driving the vehicle while intoxicated or that he was in physical control of the vehicle while intoxicated.

2. Effective July 1, 2003, Tennessee Code Annotated section 55-10-401(a)(2) will read: "The alcohol concentration in such person's blood or breath is eight-hundredths of one percent (.08%) or more."

In *Lawrence,* this Court affirmed a defendant's conviction for driving under the influence when the defendant was found asleep behind the wheel, with his truck parked "completely in the road," by a Johnson County Sheriff's Deputy. *Id.* at 762. Despite the fact that the engine was not running and the ignition key was in the defendant's pocket, this Court held that the defendant "was in physical control of his automobile within the meaning of [section] 55–10–401(a)." *Id.* at 765. In doing so, we adopted a totality of the circumstances test for purposes of determining whether a person was in physical control of a motor vehicle *or* driving a motor vehicle. *Id.* We noted that such an inquiry is highly factual and that *all* circumstances should be taken into consideration by the trier of fact when determining whether the defendant actually drove the vehicle or was in physical control of the vehicle in a particular case. Specifically, we stated that relevant factors that the trier of fact should take into account include:

> the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or nonuse of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

*Id.* at 765.

■ Although neither the defendant nor the State addressed the issue in briefs, the Court of Criminal Appeals aptly noted that the evidence was sufficient to support the jury's finding that the defendant was guilty of *driving* while under the influence of an intoxicant, rather than merely being in physical control of a motor vehicle while

under the influence of an intoxicant. As we previously noted, the *Lawrence* factors "can be used as circumstantial evidence that the defendant had been *driving* the vehicle." *Id.* at 765 (emphasis in original). In this case, the defendant was confronted by Deputy Owen in the parking lot of Wal–Mart approximately one hundred yards away from his motorcycle with the motorcycle sparkplug in his hand. The defendant told Deputy Owen that he had driven to Wal–Mart to get a part for his motorcycle. During questioning by Deputy Owen, the defendant "reeked" of alcohol, had slurred speech, was unsteady on his feet, and had a half-empty bottle of tequila on his person.

Furthermore, the key to the motorcycle was in the ignition. Although the defendant's helmet was in the store indicating that the defendant had been there at least a short time before being confronted by Deputy Owen, taking all of the evidence into account, the jury, as the trier of fact, was not obligated to believe the defendant's assertion that he first began to drink from his bottle of tequila while shopping in the automotive department of the Wal–Mart store. Moreover, it is undisputed that the defendant's motorcycle was not flooded when it arrived in the parking lot. It became flooded sometime thereafter. Given those facts, the jury could have reasonably found that the defendant, in his drunken condition, made numerous attempts to start the engine after he had removed the sparkplug, thus causing the flooded condition. Accordingly, from the evidence presented, the jury could have reasonably found that the defendant had actually driven to Wal–Mart while intoxicated.[3]

---

**3.** Though the record does not indicate under what theory the jury found the defendant guilty of driving under the influence, (either driving while intoxicated or being in physical control of a motor vehicle while intoxicated) we have previously stated that more is not

Additionally, the State argues that based upon the evidence presented in this case, a rational juror could have found that the defendant was in physical control of the vehicle within the meaning of section 55–10–401(a). We agree. First, when the defendant was apprehended by Deputy Owen, he was in reasonably close proximity to his motorcycle (one hundred yards) having just removed the sparkplug in the parking lot. Though the motor was not running nor was the motorcycle moving, it has long been the law in this state that a driving under the influence conviction based upon physical control does not hinge on whether the vehicle's engine is running or whether the vehicle is in motion. *See Hester v. State,* 196 Tenn. 680, 270 S.W.2d 321, 322 (1954) (motor running not required); *State v. Ford,* 725 S.W.2d 689, 690–91 (Tenn.Crim.App.1986) (vehicle in motion not required).

In addition to the defendant being in close proximity to the vehicle, the key was in the ignition. Furthermore, the fourth *Lawrence* factor concerning the "defendant's ability, but for the intoxication, to direct the use or non-use of the vehicle" weighs heavily against the defendant based on the fact that he removed the sparkplug just prior to being accosted by Deputy Owen, at a point in time when the evidence reveals he was intoxicated. When we weighed this factor in *Lawrence,* we were mindful that the defendant "had the present physical ability to direct the vehicle's operation and movement." *Lawrence,* 849 S.W.2d at 765. In other words, the "[d]efendant could have at any time started the engine and driven away." *Id.* Likewise in this case, the fact that the defendant had the present ability to remove the sparkplug while in an intoxicated

state demonstrates that he could direct the motorcycle's operation and movement.

Likewise, we are persuaded that the fifth *Lawrence* factor—the extent to which the vehicle is capable of being operated or moved under its own power or otherwise—weighs in favor of finding that the defendant was in physical control of his motorcycle. In support of his claim that he was not in physical control of his motorcycle when he was arrested, the defendant cites the case of *State v. Carter,* 889 S.W.2d 231 (Tenn.Crim.App.1994). In *Carter,* the Court of Criminal Appeals held that the evidence was insufficient to support the defendant's conviction for driving under the influence because her car was incapable of being operated without substantial mechanical repairs. The defendant was parked at a dentist's office. An officer was sent to the scene to investigate a report of a potentially intoxicated driver. When the officer arrived, the defendant was unsuccessfully attempting to start her car. Ultimately, the defendant was arrested for driving under the influence. *Id.* at 232.

At trial, an experienced automobile mechanic, James Srock, testified that the defendant's car battery "was dead and that the vehicle could not be jump started." *Carter,* 889 S.W.2d at 233. Additionally, Mr. Srock testified that "the vehicle would start only if the carburetor were replaced or taken apart and thoroughly cleaned." *Id.* The Court of Criminal Appeals found the situation to be analogous to the hypothetical scenario we offered in *Lawrence* suggesting that a conviction would be improper if "an intoxicated person [was] sitting in the driver's seat of an automobile having no tires and mounted on blocks." *Id.* (quoting *Lawrence,* 849 S.W.2d at 765).

required of a jury "than a general verdict in cases where only one offense is at issue based upon a single criminal occurrence." *State v.*

*Lemacks,* 996 S.W.2d 166, 171 (Tenn.1999) (citing *Schad v. Arizona,* 501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)).

In evaluating the fifth *Lawrence* factor, we note that other states with driving under the influence statutes similar to those in Tennessee have applied a "reasonably capable of being rendered operable standard" in cases where defendants have claimed that their vehicles were not operational in an attempt to show that there was no physical control of the vehicle. *See, e.g., Kingsley v. State*, 11 P.3d 1001, 1004 (Alaska Ct.App.2000); *State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690 (1984).

In *Smelter*, the defendant was found intoxicated in his car by a Washington State Patrol officer. At that time, the vehicle was out of gas. After being convicted of being in physical control of a motor vehicle while under the influence of intoxicating liquor, the defendant argued that because his car was out of gas, he could not be in physical control of the vehicle. *Smelter*, 674 P.2d at 691. The *Smelter* Court noted that under the reasonably capable of being rendered operable standard, the proper focus was not narrowly on the "mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move." *Id.* at 693. Thus, the *Smelter* Court held that where "circumstantial evidence permits a legitimate inference that the car was where it was *and was performing as it was* because of the defendant's choice, it follows that the defendant was in" physical control of the vehicle. *Id.* (emphasis added).

■ Upon review, we find the reasoning of the *Smelter* Court persuasive, and we adopt the reasonably capable of being rendered operable standard in cases where a defendant contests the element of physical control based upon alleged inoperability of the vehicle. This standard will aid the trier of fact in evaluating the fifth *Lawrence* factor in that it "distinguishes a car that runs out of gas on a major freeway near several exits and gas stations from a car with a cracked block which renders it 'totally inoperable.'" *Smelter*, 674 P.2d at 693.

When we apply the reasonably capable of being rendered operable standard in the instant case, we conclude that the present case is distinguishable from *Carter*. Unlike the automobile in *Carter*, which required a new battery and substantial engine work to become operational, in the instant case, the only reason that the defendant's motorcycle was not operational at the time of his arrest was because he had just removed the sparkplug and flooded the engine. Moreover, the defendant admitted to driving the motorcycle to Wal–Mart shortly before being arrested. Thus, based upon the evidence and the defendant's own admissions, a rational juror could have determined that the defendant's vehicle was either operable or reasonably capable of being rendered operable. Accordingly, we hold that an examination of the *Lawrence* factors demonstrates that a rational juror could have found that the defendant in this case was in physical control of his vehicle for purposes of section 55–10–401(a).

## SENTENCING

■ Finally, the defendant has challenged his fine and sentence as being overly harsh. Specifically, the defendant asserts that the trial judge failed to give proper weight to the mitigating factor that "the conduct of Mr. Butler did not cause or threaten bodily injury." *See* Tenn.Code Ann. § 40–35–113(1) (1997). The defendant bears the burden of establishing that the sentence imposed by the trial court was erroneous. *See Ashby*, 823 S.W.2d at 168. In conducting a *de novo* review of a

criminal sentence, this Court must "consider the evidence received at the trial and the sentencing hearing, the pre-sentence report, the principles of sentencing, the arguments of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation." *Reid*, 91 S.W.3d at 309–10 (citing Tenn.Code Ann. § 40–35–210 (1997 & Supp.2002); *Ashby*, 823 S.W.2d at 169). Additionally, we note that in conducting this *de novo* review, if our review indicates that the trial court abided by the statutory sentencing procedure, that the trial court imposed a lawful sentence after having given consideration and "proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result." *State v. Pike*, 978 S.W.2d 904, 926–27 (Tenn.1998).

■ The pre-sentence report reveals that the defendant was a divorced fifty-three-year-old male. He had eight prior convictions, including two felony marijuana convictions, three convictions for driving under the influence, and three convictions for driving with a revoked license. The report also showed that the defendant had a $25,000 credit card debt and that "it may be difficult for him to meet any substantial monetary demands placed upon him by the court."

After establishing that the defendant possessed two prior felony convictions, the trial court properly determined that the defendant was a Range II offender under the Tennessee Criminal Sentencing Reform Act of 1989. A Range II offender convicted of driving under the influence, fourth offense (a Class E felony), is subject to a potential criminal sentence of two to four years confinement. *See* Tenn.Code Ann. § 40–35–101 (1997). In determining the appropriate sentence for the defendant, the trial court considered the mitigating factor that the "defendant's criminal conduct neither caused nor threatened serious bodily injury." Tenn.Code Ann. § 40–35–113(1) (1997). However, in weighing the mitigating factor the trial court stated: "I don't tend to give [the mitigating factor] a lot of weight because of the fact that we're talking about a [fourth driving under the influence conviction]." The defendant claims that the trial court's sentence of four years was excessive because it failed to give the proper weight to this factor. We disagree.

In addition to the one mitigating factor, the trial court also considered two enhancement factors in determining the defendant's sentence: 1) the defendant had a prior history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and 2) the defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. *See* Tenn.Code Ann. § 40–35–114(1), (8) (1997). In weighing these factors, the trial court concluded that a four-year Range II sentence was proper. We have previously observed that if a trial court weighs one or more factors more heavily than the defendant thinks is appropriate, "the [trial] court's decision to do so is proper given the discretion allowed a trial court in considering enhancement factors." *State v. Boggs*, 932 S.W.2d 467, 475 (Tenn.Crim.App.1996) (citing *State v. Moss*, 727 S.W.2d 229, 238 (Tenn.1986)).

Additionally, the defendant argues that the $10,000 fine imposed by the trial court is excessive. Although the trial court reduced the fine assessed by the jury, in an effort to underscore the severity of the defendant's fourth driving under the influence conviction, the trial court conditioned

the defendant's ability to regain his license in the future upon payment of the $10,000 fine and court costs. Though the defendant's ability to pay the fine is a factor in the establishment of the fine, *see* Tennessee Code Annotated section 40–35–207(a)(7) (1997), it is not a controlling factor. Given the severity of the offense committed by the defendant and his criminal history, we find no error or abuse of discretion in either the imposed prison sentence or the fine. Thus, we hold that the defendant was properly sentenced.

■ Finally, the defendant contends that the trial court erroneously considered a 1990 conviction for driving under the influence in contravention of the ten-year rule established in Tennessee Code Annotated section 55–10–403(a)(3) (1997 & Supp.2002). Because the defendant failed to raise this issue in his motion for a new trial and because the defendant failed to present the issue to the Court of Criminal Appeals, as required by Tennessee Rule of Appellate Procedure 3(e), we hold that the issue is not properly before our Court and is waived.

## CONCLUSION

In sum, the evidence was sufficient to support the defendant's convictions for driving under the influence. We also hold that in a case where the defendant contests the element of physical control under the driving under the influence statute, based upon alleged inoperability of the defendant's vehicle, the trier of fact will apply the reasonably capable of being rendered operable standard in evaluating the fifth *Lawrence* factor. Finally, we hold that the defendant's sentence and fine are proper. Accordingly, the decision of the Court of Criminal Appeals is affirmed.

Because it appears to the Court that the defendant, Rodney M. Butler, is indigent,

costs of the appeal will be paid by the State of Tennessee.

ADOLPHO A. BIRCH, J., filed a concurring and dissenting opinion.

ADOLPHO A. BIRCH, JR., J., concurring and dissenting.

Although I agree with the law applicable to this case, I cannot agree with the majority's application of that law to the facts here presented. The majority holds that the evidence is sufficient to convict the defendant of the offense of Driving Under the Influence based on either (or both) of two theories:

1. That the defendant drove the motorcycle while under the influence of an intoxicant; or

2. That the defendant was in physical control of the motorcycle while intoxicated.

As to the first theory, I certainly acknowledge the jury's right to reject the defendant's testimony that he began drinking after having driven to Wal–Mart. Accordingly, the evidence is sufficient in this regard.

As to the physical control issue, however, I do not believe that the evidence was sufficient to show that the defendant had "actual physical control" over his motorcycle at the time of his arrest. I agree with the majority's statement that when determining whether a person is in physical control of a motor vehicle, we look to the totality of the circumstances including:

The location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, [and] the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

*State v. Lawrence,* 849 S.W.2d 761, 765 (Tenn.1993).

Considered in light of the foregoing factors, I find the evidence insufficient to show that the defendant was in actual physical control of his motorcycle at the time of arrest. First, the defendant was approximately one hundred yards away from his motorcycle at the time of arrest. The majority states that the defendant "was in reasonably close proximity to his motorcycle." I do not agree. I think we begin a downhill slide when we convict a defendant of Driving Under the Influence when that defendant was approximately a football field away from the vehicle at the time of arrest. It is simply counter-intuitive to arrest for *driving* a vehicle when the arrestee is publicly drunk a great distance from the vehicle. The implications of this application of the law for public events is great and extends far beyond the legislature's intent in creating the Driving Under the Influence statute.

Additionally, the motorcycle was inoperable at the time of the defendant's arrest. The mechanic testified that the spark plug in the defendant's motorcycle had to be replaced and the cylinder drained prior to the vehicle becoming operational. It is true that the defendant could have obtained another spark plug at Wal–Mart. He could not (or at least could not without difficulty), however, drain the cylinder in the Wal–Mart parking lot. Therefore, at the time of arrest, the motorcycle was not operational. The majority states that "the fact the defendant had the present ability to remove the spark plug while in an intoxicated state demonstrates that he could direct the motorcycle's operation and movement." This could demonstrate, also, that the defendant was not intoxicated at the time he removed the spark plug, which is what the defendant contends. The instant case is analogous to *Carter,* which

held that the evidence was insufficient to convict for Driving Under the Influence where the car battery was dead. Here, the defendant could not himself drain the cylinder and make the motorcycle operational.

Therefore, in consideration of the foregoing, I concur with the majority that the evidence is sufficient to prove that the defendant drove while under the influence of an intoxicant. I, however, dissent in the holding of the majority that the evidence is sufficient to prove that the defendant was in actual physical control of his motorcycle at the time of his arrest.