IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

NOVEMBER 1997 SESSION


FILED

March 3, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 03C01-9612-CR-00476 |
| | ) | |
| vs. | ) | Sullivan County |
| | ) | |
| DAVID LEE BELLAMY, | ) | Honorable R. Jerry Beck |
| | ) | |
| Appellant. | ) | (DUI - 3d) |
| | ) | |

**FOR THE APPELLANT:**

STEPHEN M. WALLACE
District Public Defender

GALE K. FLANARY
Asst. District Public Defender
P.O. Box 839
Blountville, TN 37617

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General & Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

H. GREELEY WELLS, JR.
District Attorney General

JOSEPH EUGENE PERRIN
Asst. District Attomey General
P.O. Box 526
Blountville, TN 37617

**OPINION FILED:** _____

**AFFIRMED**

**CURWOOD WITT, JUDGE**

# OPINION

The defendant, David Lee Bellamy, appeals his conviction of driving under the influence, third offense. He was convicted in the Sullivan County Criminal Court following a trial by a jury of his peers. The trial court sentenced the defendant to eleven months and 29 days in the county jail, with mandatory minimum service of 120 days, imposed a $10,000 fine, and revoked the defendant's driving privileges for ten years. In his direct appeal, the defendant raises challenges to the sufficiency of the convicting evidence and the trial court's refusal to instruct the jury that the vehicle which the defendant occupied at the time of his arrest must have been "operational and capable of being driven." Having reviewed the record and the parties' briefs, we affirm the judgment of the trial court.

At trial, the state's evidence consisted of the testimony of Officer Timothy Darin Horne of the Kingsport Police Department. In the early evening hours of April 14, 1996, Officer Horne responded to a call at the Midfield Market. When he arrived, he found an older model truck sitting six to seven feet off the roadway. The truck was at an angle that prevented access to the market's gas pumps. The defendant was in the driver's seat, and he was passed out, asleep or "real tired." He held a beer in his left hand, and there were several opened beer cans in the passenger side floor board. One unopened can of beer sat on the passenger seat. Officer Horne attempted to revive the defendant for four to five minutes to no avail. He observed the keys in the ignition in an "on" position and the stereo playing, although the truck was not running. After removing the keys from the ignition and the beer from the defendant's hand, Officer Horne eventually roused the defendant, who reached toward the ignition mechanism of the truck. Officer Horne observed that the defendant had a strong odor of alcohol, slow, thick tongued speech, and red, glassy, blood shot eyes. The defendant was so unsteady on his feet when he stepped out of the truck that Officer Horne believed field sobriety tests might endanger the defendant's safety. Officer Horne had to help the defendant walk to the patrol car.

Officer Horne also testified that after the defendant was out of the truck, an employee of the market began to move the truck. He started the truck but never actually caused it to move other than some "rocking" back and forth. According to Officer Horne, the employee changed his mind about moving the truck due to potential liability for damage to the vehicle or missing items. Therefore, a tow truck was called to remove the vehicle.

Once the defendant was transported to the jail, he refused to submit to a blood alcohol test. Officer Horne testified, however, that based upon his observations and experience as a law enforcement officer, the defendant's ability to operate a motor vehicle was impaired at the time of his apprehension. Further, Officer Horne was at the scene for 20 to 25 minutes and saw no one other than the defendant around the truck. Officer Horne conceded he did not know who owned the truck.

The defendant's evidence consisted solely of the testimony of Ricky Bellamy, the defendant's brother. Ricky Bellamy testified he and his brother had been at their father's home on April 14. The defendant had consumed "quite a bit" of alcohol, and Ricky Bellamy offered his brother a ride home in his 1972 Ford pickup truck. Ricky Bellamy intended to stop at Midfield Market to buy gas, but his truck quit. When the truck died, it had no power or lights. Ricky Bellamy decided to walk back to his father's house to see if he could find one of his brothers other than the defendant to assist him. According to Ricky Bellamy, he left the defendant sitting in the passenger seat of the truck, as the defendant was too drunk to be of assistance. When Ricky Bellamy returned to the market at least 30 minutes later, both his truck and the defendant were gone. He later learned of his brother's arrest and the impoundment of his truck. Finally, Ricky Bellamy testified he has worked as a mechanic, and in his opinion, the truck died due to a dead battery. He explained that a dead battery would prevent the lights and radio from working.

2

Against this factual backdrop, the jury found the defendant guilty of driving under the influence. In the second stage of a bifurcated trial, the jury found that this was the defendant's third offense.

I

In his first issue, the defendant claims the state presented insufficient evidence at trial to support a finding he drove or was in control of a motor vehicle on a public road, highway or parking lot frequented by the public at large. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is, whether after considering the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); <u>State v. Duncan</u>, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Dykes</u>, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); <u>Farmer v. State</u>, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>Cabbage</u>, 571 S.W.2d at 835.

Moreover, a criminal offense may be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995); State v. Lequire, 634 S.W.2d 608 (Tenn. Crim. App. 1987). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610 (1971); Jones, 901 S.W.2d at 396. In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

The driving under the influence statute in effect at the time of the defendant's crime provided:

> It is unlawful for any person or persons to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state of Tennessee, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

Tenn. Code Ann. § 55-10-401(a) (1993) (amended 1996). On appeal, the defendant does not challenge the fact that he was intoxicated; rather, he has limited his challenge to the issue of whether the state's evidence sufficiently proved he drove or was in physical control of a vehicle. The essence of the defendant's argument is that the truck was not operable at the time he was apprehended.

We begin by noting the sufficiency of the evidence to prove that the defendant drove the truck to Midfield Market. In the light most favorable to the state, the defendant was seen unconscious or asleep in the driver's seat of the truck. No one else was around the truck, nor did anyone appear within the 20 to 25

4

minutes Officer Horne was present. The keys were in the ignition with the switch turned to the "on" position. The truck's stereo was playing. The vehicle was found mere feet from the roadway at an angle which indicated it had come from the road. When the defendant awoke or regained consciousness, he reached toward the ignition. The weighing of the state's strong circumstantial evidence against the defendant, on the one hand, and the defendant's brother's testimony that he was the driver, on the other, is simply a question of credibility for the jury to resolve.

Moreover, the evidence supports a finding the defendant was in physical control of the truck, notwithstanding the defendant's brother's claim the truck's battery was dead. Our supreme court has acknowledged that physical control exists, inter alia, in "'the situation in which the defendant is found intoxicated either in or beside the parked vehicle and the circumstantial evidence strongly indicates that the defendant drove to the location in an intoxicated condition.'" State v. Lawrence, 849 S.W.2d 761, 763 (Tenn. 1993) (quoting unidentified 1988 court of criminal appeals decision). In the same opinion, the supreme court announced that "the totality of the circumstances approach in assessing the accused's physical control of an automobile for purposes of [the driving under the influence statute] should be followed in Tennessee." Lawrence, 849 S.W.2d at 765. Some of the facts the supreme court said may be relevant include:

> the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Lawrence, 849 S.W.2d at 765. In addition to the facts outlined above, the state's evidence included testimony that an employee of Midfield Market was able to start the truck in which the defendant was found. The fact that the truck was not actually moved under its own power does not mean that such could not be done. See State v. Hobart A. Moore, No. 03C01-9409-CR-00340 (Tenn. Crim. App., Knoxville, July 13, 1995) (the fact that a vehicle was towed does not conclusively establish that it could not move of its own power). To be sure, the jury was within its realm in

5

inferring the contrary. Cf. Hobart A. Moore (evidence sufficient to support conviction of defendant found "passed out" and slumped over steering wheel with motor running and doors locked, even though defendant claimed vehicle was inoperable because it was parked across a ditch). By its verdict, the jury obviously discredited the defendant's evidence in favor of the state's evidence. Having reviewed all of the evidence in the light most favorable to the state, we find it sufficient to support the defendant's conviction of driving under the influence by the exercise of physical control.[1]

## II

The defendant's remaining complaint about the proceedings below is that the trial court erroneously failed to give the following instruction, "That for the jury to convict the defendant of driving under the influence in this case it must find beyond a reasonable doubt that the motor vehicle in question must have been operational and capable of being driven by the defendant at the time of his arrest." The defendant premises his argument on an unreported decision of this court, State v. Jack Stephen Sorrells, No. 03C01-9503-CR-00083 (Tenn. Crim. App., Knoxville, Nov. 9, 1995), perm. app. denied concurring in results only (Tenn. 1996).

We reject the defendant's claim. This jury instruction is not an accurate statement of the law. First, as regards a DUI conviction based upon the defendant having actually driven the vehicle, it is not necessary that a motor vehicle be operational and capable of being driven at the time a DUI defendant is arrested.

---

[1] In so holding, we distinguish our decision from that in State v. Carter, 889 S.W.2d 231 (Tenn. Crim. App. 1994). In Carter, a panel of this court found the evidence insufficient to support the defendant's conviction of driving under the influence in the face of uncontroverted expert testimony that the defendant's car would not start due to a dead battery and the choke being stuck. In the case at bar, the record reflects that defendant's claim the truck could not be started was sharply challenged by contrary proof.

Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895 (1961) (defendant asleep at the wheel of motor vehicle on the road, vehicle inoperable due to broken clutch). It is not difficult to conceive of several factual scenarios under which a motor vehicle might not be operational and capable of being driven when a defendant is arrested, but which would and should support a guilty verdict of driving under the influence.[2] For example, an under-the-influence defendant might be involved in a one-car accident which renders his vehicle inoperable. Similarly, an under-the-influence defendant's vehicle may break down as he is driving or exercising physical control over it. Certainly, in these situations, the defendant has committed the crime of DUI, even though his vehicle is not operable and capable of being driven when a law enforcement officer later arrives to arrest him.

The defendant's proffered jury instruction is likewise an inaccurate statement of the law with respect to the second alternative for a finding of DUI, that the defendant exercised physical control over a motor vehicle while impaired. As we recognized in section I above, our supreme court has said that "the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise" is a factor which may be relevant in assessing a defendant's physical control of a vehicle. Lawrence, 849 S.W.2d at 765. By categorizing this factor as one which may be relevant in a totality of the circumstances analysis, the supreme court has left the decision of the weight to be given to it in a particular factual scenario to the trier of fact. Compare Hester v. State, 196 Tenn. 680, 270 S.W.2d 321 (1954) (defendant in physical control where he was steering vehicle with engine not running, another vehicle pushing defendant's vehicle); State v. Lane, 673 S.W.2d 874 (Tenn. Crim. App. 1983) (defendant in physical control where he was steering vehicle with dead battery, another individual pushing defendant's vehicle) with Lawrence, 849 S.W.2d at 765 ("[The DUI statute is not] so expansive as to permit a conviction where clearly not warranted, i.e., an intoxicated person sitting

---

[2] As the supreme court has recognized, the obvious legislative aim of the DUI statute is to see that the drunken driver is apprehended before he maims or kills himself or another. Lawrence, 849 S.W.2d at 765.

in the driver's seat of an automobile having no tires and mounted on blocks.")  The defendant's proffered instruction would, in this case, usurp the jury's role in assessing the totality of the circumstances.

Because the defendant's proffered jury instruction is an inaccurate statement of the law both as to DUI by driving a vehicle, as well as by being in physical control of a vehicle, the trial court did not err in declining to give this instruction.  See, e.g., Harper v. State, 206 Tenn. 509, 523, 334 S.W.2d 933, 939 (1960); State v. Moffett, 729 S.W.2d 679, 681 (Tenn. Crim. App. 1986).

In conclusion, we find no error in the proceedings below.  The judgment of the trial court is affirmed.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
JOSEPH B. JONES, PRESIDING JUDGE


_____
PAUL G. SUMMERS, JUDGE