IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2004 Session

## STATE OF TENNESSEE v. STEVEN FREDERICK BRINKLEY

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-T-324    Frank G. Clement Jr., Judge**

_____

**No. M2003-02419-CCA-R3-CD - Filed December 22, 2004**

_____

The Defendant, Steven Frederick Brinkley,[1] was convicted of driving under the influence of an intoxicant ("DUI"), second offense, and violation of the implied consent law. On appeal, the Defendant contends that the evidence presented at trial is insufficient to sustain his conviction for DUI because: (1) he was not in "physical control" of his vehicle; and (2) the parking lot where his vehicle was located was not a premises frequented by the public at large. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

V. Michael Fox, Nashville, Tennessee, for the appellant, Steven Frederick Brinkley.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Jennifer Tackett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises out of the Defendant's convictions for a second offense DUI and a violation of the implied consent law. The Defendant waived his right to a jury trial, and, on August 7, 2003, the trial court held a bench trial where the following evidence was presented. Ann Marie Mozzio, an officer with the Vanderbilt University Police Department, testified that, on February 28, 2002, she encountered the Defendant. Officer Mozzio testified that, around 11:30 p.m. on that day, she

_____

[1]We note that the Defendant requested to be referred to as a "she," however, for the sake of clarity, we will refer to the Defendant with masculine pronouns. The judgment of conviction entered in the trial court indicates that the Defendant is a male.

noticed a car that "looked out of place" parked in a parking lot. She said that she routinely drove past that parking lot and noticed the car because it was not parked in a parking spot. The officer described the parking lot where she saw the Defendant's car. She said that it was not barricaded off and there was neither a fence nor a metal arm to prohibit people from entering or exiting. She said that to get to the parking lot one would have to drive on a public roadway.

The officer testified that, when she first noticed the car, she thought the car belonged to one of the Vanderbilt Police Department's detectives, but, when she examined the car more closely, she noticed that it was not one of their detectives' so she pulled behind the car. The officer testified that, after she pulled in behind the vehicle, she shined a spotlight through the back window of the car onto the Defendant. Officer Mozzio testified that she got out of her car, approached the Defendant's car, and started "banging on the windows" because the Defendant was "slumped over" in the driver's seat with the car running. The officer said that, while the car was running, the vehicle was not moving. She said that she pounded on the window for "a minute or two" and called for an ambulance because she thought that the Defendant may have been suffering a heart attack. She said that, thereafter, the Defendant "came to," and the officer asked the Defendant to roll the car windows down. The officer said that the Defendant started "fumbling through the door locks and the mirror movers" and finally the officer told the Defendant to open the car doors, which he did.

The officer said that, when the Defendant opened the car doors, the "odor of alcohol was intense," so she asked the Defendant if he had been drinking and the Defendant told her that he had consumed three drinks. Officer Mozzio said that another officer came to assist her and that the other officer gave the Defendant a field sobriety test, on which the Defendant performed poorly. The officer said that, on the one-leg stand test, the Defendant was "falling over and could not perform it." The officer said that, in her opinion, the Defendant was intoxicated that evening.

On cross-examination, the officer testified that the parking lot where she found the Defendant requires a permit in order to be legally parked there. The officer said that, in that regard, the parking lot was not open to the public. The officer said that she created a "tow slip" to have the Defendant's car towed from the parking lot. The officer testified that she did not know who drove the car to the parking lot, and she did not know how long the car had been sitting in that spot. Officer Mozzio said that, when she found the Defendant, he had a phone in his hand. The officer said that the weather was cold on the day of the incident. On re-direct examination, the officer testified that the public was permitted to park in the parking lot without a permit when they went to Vanderbilt for billing purposes.

Shawn Taylor, an officer with the Metropolitan Police Department, was unavailable at the time of the trial, but the parties stipulated that, had he testified, he would have testified as follows:

> [The Defendant had] . . . obvious impairment, bloodshot, watery eyes, dilated pupils, obvious odor, [and] slurred speech. I explained the new implied consent law. License currently revoked for DUI, said he understood, but refused the breat[h] alcohol test.

The Defendant called Robert Neil James to testify on his behalf. James testified that he had known the Defendant for approximately three years and that, on February 28, 2002, he received a phone call from the Defendant at 10:01 p.m. James identified and testified from his Verizon cell phone bill from February 28th. James testified that, when the Defendant called him, the Defendant asked James to come and pick him up because he could not drive. James stated that he told the Defendant that he would come and get the Defendant and that the Defendant should wait for him. James said that he came to Nashville to attempt to pick the Defendant up, but he could not find the Defendant because he would not answer his cell phone.

On cross-examination, James testified that he spoke with the Defendant at 8:51 p.m. and, at that time, the Defendant was leaving work at Sears. He said that, later, when he spoke with the Defendant around 10:00 p.m., the Defendant asked to be picked up because the Defendant was too intoxicated to drive. The Defendant told him that, when he got closer to Nashville, the Defendant would give him his exact location. James testified that he lived an hour away from Nashville, but he left immediately to go get the Defendant. James said that the Defendant called him again at 10:38 p.m. and told James that he was cold and waiting in his car. James said that, after this conversation, he called the Defendant's cell phone multiple times to attempt to get his exact location because he was unfamiliar with this area. He also called the Defendant's home number to make sure that the Defendant was not at home. James said that he again spoke with the Defendant for approximately fifteen minutes at 11:15 and the Defendant said he was in the parking lot. James could not explain why he called the Defendant again at 12:00 a.m. at the Defendant's house. On re-direct examination, James said that he found out that the Defendant had been arrested, and he helped the Defendant make bail at around 1:00 a.m.

Based upon the foregoing, the trial court found the Defendant guilty of second offense DUI[2] and of violation of the implied consent law. In so doing, it stated:

First, at a previous motion to suppress hearing, I didn't add the defense's position to dismiss which was the area where the arrest occurred was not within the scope of the statute, that it was not public property or premises generally frequented by the public, et cetera. It was not a shopping center, et cetera.

Today [the Defendant's counsel] has introduced some evidence concerning that issue, and his concern was that we should revisit it. I find that the evidence was insufficient for me to change my findings or my legal conclusions. . . . This parking lot, though it has a sign reserved parking permitted only, the officer indicated that the buildings adjacent to this parking lot are public-use buildings.

My recollection is that they were medical records offices at Vander[bilt] Medical Center. Today, I heard comments that it was billing offices or billing records. I don't remember which. But the evidence still suggests that it was for the

_____

[2]The parties stipulated that the Defendant had one previous DUI conviction.

public to use, to conduct some business at the Vanderbilt Medical Center, and so I stand by my prior ruling. . . .

Now, the defense pretty much stipulates to everything, but physical control. That's the real issue and question about it. But the evidence is pretty compelling that the [D]efendant was impaired and under the influence of an intoxicant in Davidson County at the time of the arrest.

The Vanderbilt police officer's testimony clearly suggested that. There was an overwhelming . . . odor of alcohol . . . and . . . the [D]efendant was not able to stand to do the field sobriety test.

Also, the other officer, Shawn Taylor . . . indicated that [he] believed that the [D]efendant was impaired, under the influence, and the factual evidence supports that. So to find that the [D]efendant was under the influence from an intoxicant to the issues here now, the question is physical control.

. . . .

The testimony in this situation was the car was operable. The engine was running. The [D]efendant was in the driver's seat. The key was in the ignition. The motor was running. The [D]efendant clearly was in physical control, but the [D]efendant was passed out or asleep, whichever respective you opt to take.

The difficult thing for me is that the [D]efendant when the officer awoke [him] said that I am waiting for somebody to pick me up. There's a witness, today, that can fully corroborate that. Though, the witness' . . . time references are very confusing and troubling, I believe the witness.

But I also believe that there's some confusion as to when the witness, Mr. James, decided to come to Nashville to assist [the Defendant] because Erin is two hours and [fifty-]five minutes from Nashville.

Verizon's records might be wrong. Mr. James could clearly be right, but it just seems [awfully] confusing, and the gentleman made an [awfully] good point. You were getting directions to the parking lot. If Mr. James thought [the Defendant] was going to be at the parking lot, he would have called h[im] on the mobile [phone and not] at home, but that may come into the time warp. But sadly, it doesn't really matter.

. . . .

I'm bound to follow the law of Tennessee, and the literature written and as our

Courts have constr[ued] it. I find that I am convinced that [the Defendant] did not intend to drive, that [the Defendant] intended to wait for a friend to come and get h[im]. . . . So the friend was coming to get h[im], again, the time frames are screwed up as they may be, that is irrelevant.

[The Defendant] was in physical control of [the] car. [He] was under the influence. It was on an area frequented by the public, and I find [the Defendant] guilty of driving under the influence.

The trial court convicted the Defendant of a second offense DUI. The trial court sentenced the Defendant to eleven months and twenty nine days at 100%, with all but forty-five days suspended and ordered the Defendant to serve eleven months and twenty-nine days on probation. The trial court also ordered the Defendant to pay a $600 fine and complete an alcohol treatment program and the trial court prohibited the Defendant from driving for two years. The Defendant appeals his conviction.

## II. Analysis

The Defendant contends that the evidence presented at trial is insufficient to sustain his conviction. Specifically, he asserts that: (1) the restricted parking lot where he was found in his car does not qualify under the applicable statute as a premises "frequented by the public;" (2) he was not in physical control of the car as defined by statute because he was using the vehicle as a temporary shelter; and (3) there was no proof that he was driving under the influence of an intoxicant. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Buggs, 995 S.W.2d at 105; Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

Tennessee Code Annotated section 55-10-401 (2003) provides:

(a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or

(2) The alcohol concentration in such person's blood or breath is ten-hundredths of one percent (.10%) or more.

## A. Physical Control

The Defendant does not contend that he was not intoxicated at the time that he was arrested for DUI, rather he contends that he was not in physical control of his vehicle at the time of his arrest because he was using his vehicle as a temporary shelter, and had no intent to drive. We first note that this Court has previously observed that "there is no culpable mental state required for guilt of driving under the influence." State v. Turner, 953 S.W.2d 213, 215 (Tenn. Crim. App. 1996) (citations omitted); see also State v. James Isaac Mabe, No. 03C01-3402-CR-00051, 1994 WL 583210, at * 2 (Tenn. Crim. App., at Knoxville, Oct. 25, 1994), *no perm. app. filed* (stating "we doubt that the offense of [DUI] requires as an element that the defendant have the specific intent to drive the vehicle, in addition to having physical control."). Therefore, in the case under submission, the Defendant's assertion that he did not have the intent to drive his vehicle is of no consequence to the determination of whether he was in physical control of his vehicle, as is prohibited by the DUI statute.

We now turn to address whether the Defendant was in physical control of his vehicle. The Tennessee Supreme Court has addressed the interpretation of the term "physical control." In State v. Lawrence, 849 S.W.2d 761, 762 (Tenn. 1993), the defendant, who was intoxicated, was asleep inside his pickup truck, which was parked on, and blocking, a narrow, gravel, public road. The issue before the court was whether the defendant's actions constituted "physical control" of his vehicle so as to be sufficient to sustain his DUI conviction. Id. The Court adopted the "totality of the circumstances" test for determining whether an accused has physical control of his vehicle, stating:

[T]he test allows the trier of fact to take into account *all* circumstances, i.e., the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise.

Id. at 765. Then, considering the totality of the circumstances, the Court upheld the defendant's DUI conviction, stating, "The fact that the [d]efendant chose to park his vehicle on a country road and sleep off the effects of the alcohol is immaterial." Id.

In State v. Butler, 108 S.W.3d 845, 847 (Tenn. 2003), the defendant, who was intoxicated, was seen "wandering" around a parking lot approximately fifty feet from the entrance of a Wal-Mart and one hundred yards from his inoperable motorcycle with a sparkplug and a sparkplug wrench in his hand. The Court determined that "the evidence was sufficient to support a conviction for driving under the influence based on a theory that the defendant . . . was in physical control of the vehicle while intoxicated." Id. at 849. The Court, considering the totality of the circumstances, held that the defendant was in "reasonably close proximity to his motorcycle (one hundred yards)" and, while the defendant's motorcycle was not moving, "physical control does not hinge on whether the vehicle's engine is running or whether the vehicle is in motion." Id. at 851 (citing Hester v. State, 196 Tenn. 680, 270 S.W.2d 321, 322 (1954) (holding that the vehicle's motor running is not required); State v. Ford, 725 S.W.2d 689, 690-91 (Tenn. Crim. App. 1986) (holding that the vehicle in motion is not required)). Further, the Court held that the fourth factor listed in Lawrence, which concerned "the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle" weighed heavily against the defendant because the defendant had recently rendered the motorcycle inoperable. Id. The Court concluded that "a rational juror could have found that the defendant in this case was in physical control of his vehicle." Id.

In the case under submission, after reviewing the totality of the circumstances and the factors enumerated by the Court in Lawrence, we conclude that a rational trier of fact could have found that the Defendant was in physical control of his vehicle. The first factor, concerning the location of the Defendant in relation to the vehicle, weighs against the Defendant because the Defendant was found in his vehicle. Further, the Defendant's key was in his car's ignition, and the motor to the car was running. It is clear that, but for the Defendant's intoxication, he could have directed the use or non-use of the vehicle. The Defendant's assertions that he was using his car as a shelter, while corroborated, are not relevant to the analysis of whether he was in physical control of his vehicle for purposes of the DUI statute. Therefore, this issue is without merit.

## B. Premises

The Defendant also contends that the evidence is insufficient to sustain his conviction because the parking lot where he was arrested is not a "premises which is generally frequented by the public at large." This Court and the Tennessee Supreme Court have held that parking lots are premises generally frequented by the public at large. See, e.g., State v. Ricky Dale McNeese, No. 03C01-9707-CC-00273, 1998 WL 318783, at *5-6 (Tenn. Crim. App., at Knoxville, Jun. 18, 1998), *no perm. app. filed* (affirming a DUI conviction where the defendant was parked in a gravel parking lot that had a sign prohibiting trespassers); State v. Farris John Hunter, III, No. 01C01-9504-CC-00118, 1996 WL 15662, at *1 (Tenn. Crim. App., at Nashville, Jan. 17, 1996 ), *aff'd on unrelated issue* 941 S.W.2d 56 (Tenn. 1997) (affirming a DUI conviction where the defendant was apprehended in his vehicle at

a liquor store parking lot); <u>State v. Raymond Carroll</u>, No. 02C01-9308-CC-00179, 1995 WL 568474, at *2-3 (Tenn. Crim. App., at Jackson, Sept. 27, 1995), *no perm. app. filed* (affirming a DUI conviction where the defendant was apprehended in a car wash parking lot); <u>State v. Tina Wiggs</u>, No. 01C01-9310-CC-00346, 1995 WL 324602, at *3 (Tenn. Crim. App., at Nashville, May 30, 1995), *no perm. app. filed* (affirming a DUI conviction where the defendant was apprehended in his vehicle in a convenience store parking lot).

In this case, the issue is whether the Defendant was apprehended on "any other premises which is generally frequented by the public at large." <u>See</u> Tenn. Code Ann. § 55-10-401(a). Vanderbilt's building, the parking lot of which the Defendant was apprehended, is a premises frequented by the public at large. Officer Mizzio testified that the parking lot where she found the Defendant requires a permit in order to be legally parked there and, in that regard, the lot was not open to the public. The officer also testified that the parking lot was not barricaded off, and there was no fence or a metal arm to prohibit people from entering or exiting. Further, she said that to get to the parking lot one would have to drive on a public roadway. The Officer additionally testified that the public was permitted to park in the parking lot without a permit when they went to Vanderbilt for billing purposes. From this testimony, we conclude that the trier of fact had sufficient evidence to determine that the area where the Defendant was parked was an area generally frequented by the public at large. This issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude that sufficient evidence exists to sustain the Defendant's conviction. Therefore, we affirm the Defendant's conviction.

_____
ROBERT W. WEDEMEYER, JUDGE