IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2013


**STATE OF TENNESSEE v. MARGARET LYNN MCCOY**


**Appeal from the Criminal Court for Union County**
**No. 4506     Shayne E. Sexton, Judge**

_____

**No. E2012-01859-CCA-R3-CD - Filed March 20, 2013**

_____


A Union County grand jury indicted appellant, Margaret Lynn McCoy, for driving under the influence, first offense; possession of a Schedule II controlled substance; and possession of drug paraphernalia,[1] all Class A misdemeanors.  The State dismissed the possession of a controlled substance charge, and a jury convicted her of driving under the influence, first offense, and possession of drug paraphernalia.  The trial court sentenced appellant to serve concurrent terms of eleven months, twenty-nine days for each offense, with the first sixty days to be served in confinement and the remainder on probation.  On appeal, appellant challenges the sufficiency of the evidence to sustain her convictions.  Following our review, we affirm the judgments of the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**


ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

_____

[1] The indictment included language that appellant intended to deliver drug paraphernalia, which is a Class E felony.  *See* Tenn. Code Ann. § 39-17-425(b)(1)-(2).  However, the indictment also stated that the possession of drug paraphernalia charge was a Class A misdemeanor.  *See* Tenn. Code Ann.§ 39-17-425(a)(1)-(2).  All parties treated the charge as a Class A misdemeanor throughout the proceedings.  Furthermore, the trial court included the requisite language for a Class A misdemeanor in its jury charge and sentenced appellant for a Class A misdemeanor.  We conclude that the result is, at worst, a variance between the indictment and proof.  We further conclude that the variance was not fatal because (1) appellant was not misled by the indictment because she prepared to defend against a Class A misdemeanor and was convicted of that Class A misdemeanor; (2) appellant was not prejudiced by the variance as she received a misdemeanor conviction and sentence rather than a felony conviction and sentence; and (3) the doctrine of double jeopardy protects appellant from prosecution for the Class E felony as she was convicted of a lesser-included offense.  *See State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993); s*ee also Brown v. Ohio*, 432 U.S. 161 (1977) (federal double jeopardy provision); *State v. Black*, 524 S.W.2d 913, 915 (Tenn. 1975) (state double jeopardy provision).  Therefore, we will treat the indictment as charging a Class A misdemeanor throughout this opinion.

Clarence E. Pridemore, Jr., Knoxville, Tennessee, for the appellant, Margaret Lynn McCoy.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Lori Phillips-Jones, District Attorney General; and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.  Procedural History and Facts

This case began with a call to police about a possible domestic incident between appellant and her boyfriend, Christopher Smith.  At appellant's August 28, 2012 trial, Union County Sheriff's Deputy Jeff Sharp testified that he received the initial complaint call about appellant and Mr. Smith around 10:00 p.m. or 11:00 p.m. on December 7, 2011.  He could not respond immediately.   The same complainant called a second time to report that appellant's vehicle "was traveling from Sharps Chapel Road down Maynardville Highway [and had] turned in at Bubba's driving in a reckless manner. . . .  And then it came out of there and went to Judy's Bar."  Deputy Sharp met with the complainant to obtain more information and then went to appellant's residence on Big Valley Road.

At appellant's residence, her daughter told Deputy Sharp that she did not know the location of her mother.  As he was talking to appellant's daughter, Deputy Sharp observed appellant's 2009 Dodge truck driving towards the residence.  The truck stopped and turned into the parking lot of The Shack, a business across the street from appellant's residence.  The truck drove behind the business, and Deputy Sharp got into his patrol car to follow.  He parked directly in front of appellant's truck and observed that the driver's door was open and that there were three to five people in the truck.  According to Deputy Sharp, appellant was "under the steering wheel" when he first saw her.  He could not recall whether the truck was running or if the keys were in the ignition, but he said that his "practice" was not to charge a person with driving under the influence unless the keys were in the ignition.  Deputy Sharp testified that Kimberly Johnson and Lonnie Wilkerson were in the back seat.  He further testified that he could smell alcohol as he approached the truck.  He did not let anyone exit the truck, but he opined that a person would have been able to exit easily from the passenger side door.

Deputy Sharp took appellant to a nearby building to do field sobriety tests because it was raining.  Deputy Sharp testified that appellant did not tell him that she had not been driving the truck.  When they arrived at the building, he heard "somebody holler like they're in distress."  He returned to the truck and found Mr. Smith lying under it.  At first, he thought

-2-

appellant had run over Mr. Smith, so he called an ambulance to the scene. At the same time, a security guard arrived and helped Deputy Sharp remove Mr. Smith from underneath the truck. Deputy Sharp testified that Mr. Smith had hidden under the truck and subsequently burned his hand on part of the truck. He further testified that Mr. Smith was wanted on a "child support attachment," so Deputy Sharp arrested him on the child support attachment and for evading arrest and public intoxication.

When Deputy Sharp returned to appellant, he asked her to perform several different field sobriety tests. She responded that she was unable to do the "nine[-]step walk[-]and[-]turn" due to medical issues. He observed appellant as she performed other tests. He opined that she "didn't do real [sic] bad," but she did not reach the standard. At no point did she tell him that she had not been driving the vehicle. Appellant wrote down a list of medications she had been taking and told him that she had smoked marijuana earlier in the day. She asked for a blood alcohol test. Deputy Sharp testified that the official report showed her blood alcohol content to be 0.10. He explained that the Tennessee Bureau of Investigation ("TBI"), which tested her blood, had a policy of not testing for other substances after finding an alcohol level above 0.08.

Deputy Sharp testified that he arrested appellant and performed a pat-down search. He searched her purse at the jail. Appellant told him that she had Oxycodone pills in her purse, explaining that she had a prescription for the pills but that she did not have the correct container for them. He said that appellant never provided him with proof of her prescription. Deputy Sharp found the Oxycodone pills in her purse, as well as a straw that had a blue residue on the end. He testified that both the pills and the residue on the straw were light blue in color. The TBI laboratory tested one of the pills and determined that it was Oxycodone.

On cross-examination, Deputy Sharp testified that it took approximately thirty seconds for him to leave appellant's house and drive his patrol car over to The Shack. He clarified that when he stopped his patrol car in front of appellant's truck, she was sitting behind the steering wheel, but by the time he exited his vehicle and approached the truck, she was standing next to the truck. Deputy Sharp testified that he found appellant's purse either in the front seat or the front floorboard of the truck.

The State rested its case, and appellant called Lonnie Wilkerson as her first witness. Mr. Wilkerson was a passenger in appellant's truck on December 7, 2011. He testified that Christopher Smith was driving appellant's truck that night, and appellant was sitting in the middle of the front seat. On cross-examination, he admitted that he had an aggravated burglary conviction. He further agreed that no one told Deputy Sharp that Mr. Smith was hiding under the truck.

-3-

Kimberly Johnson was also a passenger in appellant's truck on December 7, 2011. She testified that she was sitting in the front seat, and appellant was between her and the driver, Mr. Smith. She said that appellant would have had to slide behind the steering wheel to exit. On cross-examination, Ms. Johnson confirmed that the truck's engine was still running when Deputy Sharp arrived. Further, she said that Mr. Smith was her brother, and she tried not to talk about the case with him because she did not want to be "pulled in the middle of it." Ms. Johnson agreed that she had pleaded guilty in 2010 to seven counts of forgery. She also admitted that she had pleaded guilty to one count of forgery and five counts of passing worthless checks in 2011.

Appellant testified that Mr. Smith was driving her truck on December 7, 2011. They visited several bars in the area and then went to The Shack because the owner had told her she could borrow firewood. She said that by the time Deputy Sharp "got around to [them]," Mr. Smith had exited the truck, and she was in the process of exiting. Appellant testified that the truck was not running. She said that the Oxycodone found in her purse belonged to her and that she had a prescription for it. She did not know how the straw came to be in her purse. Appellant said that she had been drinking that night.

On cross-examination, appellant said that she did not tell Deputy Sharp where Mr. Smith was because she did not know. She said that Deputy Sharp never asked her whether she was the driver. She recalled that she told him that Mr. Smith had been driving, although she could not recall at what point she told him. Appellant agreed that she had a 2003 conviction for a "schedule six felony of [m]arijuana possession."

Following the close of proof, the trial court instructed the jury that appellant had been indicted for driving under the influence and possession of drug paraphernalia. The jury found appellant guilty as charged. The trial court sentenced her to serve concurrent terms of eleven months, twenty-nine days, with the first sixty days to be served in confinement and the remainder on probation.

## II. Analysis

Appellant challenges the sufficiency of the convicting evidence to sustain both of her convictions.

## A. Standard of Review

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we reweigh or reevaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

B. Driving Under the Influence

To sustain appellant's conviction for driving under the influence as indicted, the State's evidence must have proven beyond a reasonable doubt that appellant was driving or in physical control of an automobile or motor-driven vehicle on a public road or highway of the state or any other premises generally frequented by the public at large while under the influence of an intoxicant, namely alcohol. Tenn. Code Ann. § 55-10-401(a)(1) (Supp. 2011). Specifically, appellant contends that the State failed to prove that she operated a vehicle or was in physical control of a vehicle while intoxicated.

This court has opined:

The crime of driving under the influence is a continuing offense. Our Supreme Court has sustained convictions for driving under the influence even though no one saw the car in motion or saw the accused driving the car. Like any other crime, driving under the influence of an intoxicant can be established by circumstantial evidence.

*State v. Ford*, 725 S.W.2d 689, 690-91 (Tenn. Crim. App. 1986) (internal citations omitted); *see also State v. Butler*, 108 S.W.3d 845, 852 (Tenn. 2003) (affirming conviction for driving under the influence when appellant was first observed walking in a parking lot of a store). Thus, it was not necessary that the State prove that appellant was actually observed driving or in physical control of her truck, as long as the State proved by circumstantial evidence that appellant had been driving or had been in physical control of her truck on a public road or highway or any premises frequented by the public.

Viewed in the light most favorable to the State, the evidence showed that appellant was in physical control of her vehicle while intoxicated. Deputy Sharp observed her sitting behind the steering wheel of her truck. A defense witness verified that the truck engine was running when Deputy Sharp arrived. Appellant failed the field sobriety tests, and her blood alcohol content was 0.10. Deputy Sharp testified that appellant never told him that she was not driving. Appellant disputed that statement and testified that she told Deputy Sharp that Mr. Smith was driving. Defense witnesses testified that Mr. Smith had been driving the truck. However, the jury chose to believe Deputy Sharp and not to credit appellant and her witnesses, as was their prerogative. *Bland*, 958 S.W.2d at 659. Therefore, the evidence was sufficient to sustain appellant's conviction for driving under the influence.

### C. Possession of Drug Paraphernalia

To sustain appellant's conviction for possession of drug paraphernalia, the State was required to prove: "(1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute." *State v. Ross*, 49 S.W.3d 833, 846 (Tenn. 2001). The statute encompasses both actual possession and constructive possession. *Id.* at 845-46. This court has described constructive possession as "the ability to reduce an object to actual possession." *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (citations omitted).

Viewed in the light most favorable to the State, a rational juror could have found that appellant was in possession of drug paraphernalia. Deputy Sharp found a cut straw in appellant's purse. The straw contained a residue that was the same color as the Oxycodone pills. Appellant acknowledged that her prescription required her to take the pills by mouth,

-6-

not by inhalation. Appellant's only argument on appeal is that Deputy Sharp's "testimony failed to show how the cut plastic straw came to be in [appellant's] purse." She does not contest that the straw was classified as drug paraphernalia or that the residue was, in fact, Oxycodone. The jury was within its prerogative to find that appellant possessed the straw and to infer that the straw was drug paraphernalia she intended to use for an illicit purpose. Therefore, the evidence was sufficient to support appellant's conviction for possession of drug paraphernalia.

## CONCLUSION

Based on our review of the record, the briefs of the parties, and the applicable law, we find no reversible error and affirm the judgments of the trial court.

_____

ROGER A. PAGE, JUDGE