IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 5, 2018 Session

## STATE OF TENNESSEE v. DAVID MACK BREWER

**Appeal from the Circuit Court for Hardin County**
**No. 17-CR-22      Charles C. McGinley, Judge**
_____

### No. W2018-00241-CCA-R3-CD
_____

Defendant, David Mack Brewer, was indicted by the Hardin County Grand Jury with one count of DUI *per se*, one count of DUI, and one count of possession of a loaded handgun while under the influence of an intoxicant. Defendant filed a motion to suppress all "evidence, specifically including any alcohol test results, firearm, statements and field sobriety tasks results, acquired, observed and/or seized by any and all law enforcement officers, . . . by means of a warrantless entry, search, seizure and arrest of the Defendant's person, breath, acts, conduct, statements and vehicle . . . on April 26, 2016." An evidentiary hearing was held. The trial court narrowed the issues during the hearing to the sole issue of whether there was an unlawful warrantless arrest. The trial court determined that the warrantless arrest for the misdemeanor of DUI was unlawful and granted the motion to suppress on that basis. The State subsequently announced it could not prosecute without the evidence which had been suppressed and moved to dismiss the indictment as a result of the suppression ruling. The trial court dismissed the charges, and the State filed a timely notice of appeal of the trial court's suppression of the evidence. After oral argument and the review of the record and the parties' briefs, we reverse the judgment of the trial court, reinstate the indictment, and remand for further proceedings in the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Reversed and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and R. Adam Jowers, Assistant District Attorney General, for the appellant, State of Tennessee.

James Y. Ross, Sr., Waynesboro, Tennessee, and Benjamin S. Harmon, Savannah, Tennessee, for the appellee, David Mack Brewer.

## OPINION

### Evidence at Suppression Hearing

Anna Spears is employed by Securitas, a security company based in Jackson. Securitas is contracted by PCA paper mill in Hardin County to provide both security and certain medical needs at the PCA premises. Ms. Spears' job with Securitas is as an advanced EMT security officer. She was on duty on the night of April 26, 2016, when she was notified by a security officer at the scale house that a possibly intoxicated truck driver with a load of logs had just scanned in. The PCA paper mill entrance gate to the scale house is from Highway 57.

Ms. Spears went to check on the driver at the security officer's request. Ms. Spears first observed Defendant at the unbinding rack, which is approximately 500 feet from the guard shack located at the scales. An unbinding rack is where a trucker with a load of timber pulls into in order to safely "unbind to prevent any accident with the load coming off."

Defendant was inside the truck when Ms. Spears arrived at the unbinding rack. It was approximately 9:30 p.m. when she observed Defendant get out of the truck. Defendant started to unbind his load. He was staggering and appeared to have urine on the front of his pants. Defendant also "ran into a few logs on the side of his trailer." Ms. Spears asked a PCA paper mill foreman to come to the unbinding rack to check on Defendant. Ms. Spears and the foreman then approached Defendant. In response to the foreman's inquiry, Defendant admitted that he had been drinking. Ms. Spears noticed that Defendant's speech was slightly slurred.

At this point, Ms. Spears felt Defendant was intoxicated. She contacted her supervisor about the situation. The foreman told Defendant he could not unload his trailer in his present condition and Defendant agreed. Defendant then got back inside his truck.

Ms. Spears contacted Hardin County central dispatch. Deputy Sheriff James Dameron and Tennessee Highway Patrol Trooper Charles Childers arrived at the scene approximately ten to fifteen minutes later. Before the law enforcement officers arrived, Defendant got out of his truck and insisted that he be allowed to unbind his load. Ms. Spears gave him permission to do that, but told him he was still not in good shape to drive and unload the timber logs. She told Defendant to stand by her after he finished unbinding this load. Very shortly after Defendant stood by Ms. Spears, Deputy Dameron and Trooper Childers arrived.

- 2 -

The officers pulled up behind Defendant's truck, and Ms. Spears and Defendant walked over to Deputy Dameron and Trooper Childers. Ms. Spears heard Defendant, while he was talking to Trooper Childers, admit drinking some rum earlier in the day. The officers asked Defendant if they could search his truck. Defendant responded that they could search it, and he added that there was a loaded handgun inside the truck. The gun was found in the driver's side door.

Ms. Spears confirmed that in order for Defendant to reach the unbinding rack in his truck, he had to come through Gate 4 from Highway 57, pull up to the security house at the scales, get out of his truck, go inside and swipe a card, obtain a ticket, and then proceed into the mill. Defendant had to drive his truck to the unbinding rack where he remained until his arrest.

Near the conclusion of Ms. Spears' testimony, the trial court told attorneys:

> Let me see if I can help you folks focus. I think without question, this Court would find that this parking area was frequented by the public at large, regardless of gate or anything like that. That's not your issue. It's also not as has been briefed, a beautiful brief, talking about search warrants. This is not a search warrant. This is a warrantless arrest. So you folks might concentrate your efforts on that.

Trooper Charles Childers testified about the circumstances leading up to Defendant's arrest. Early in the direct testimony, Trooper Childers was asked by the State to describe his training in DUI detection. At that point the trial court interjected:

> THE COURT: Let me see if I can focus you again. There's no question this man was under the influence. That's not an issue. Once again, the issue surrounds the arrest.

Trooper Childers got out of his car and began talking with Defendant. Trooper Childers smelled a strong odor of alcohol coming from Defendant. It appeared that Defendant had urinated on himself, and Defendant had slurred speech and red, watery eyes. Defendant was unsteady and had a staggered walk. Trooper Childers recalled that Defendant admitted to having "drank a couple earlier." Trooper Childers did not recall what type of alcoholic beverage Defendant said he drank.

Trooper Childers was informed that Defendant had been driving the truck. Trooper Childers searched the inside of the truck and found the handgun, an open container of alcohol, and also an otherwise undescribed bottle on the floorboard. Trooper Childers drove back to Gate 4 to examine the signs at the entrance to PCA paper mill. He observed a sign that "did say something about only authorized drivers, trainees,

everybody has to have a hard hat on." He talked about the situation with his supervisor, and they concluded that witnesses at PCA had seen Defendant driving the truck, and Trooper Childers concluded Defendant had been driving the truck on the highway and drove into the PCA paper mill premises.

Trooper Childers then returned to Defendant's truck and asked Defendant to perform some field sobriety tests. On some of the tests Defendant gave signs and indicators that he was under the influence of an intoxicant. Taken with the strong odor of alcohol, Defendant's admission that he had been drinking, and the fact Defendant had urinated on himself and denied that he had any medical condition that would cause that situation, Trooper Childers arrested Defendant for DUI.

During cross-examination by defense counsel, Trooper Childers admitted that he had not seen Defendant driving the truck. Trooper Childers testified that as to operating the truck, he did not see Defendant in control of the truck and actually Defendant was not inside the truck when Trooper Childers arrived at the scene. However, later in his cross-examination testimony Trooper Childers testified as follows:

> A. I do - - I do believe that - - physical control to me means, does he have the ability to operate it in the very near future. That's what - - to me. Standing outside with the keys in your hand, are the keys in it, can someone take them away from you, all those things. You know, if you were 30 minutes away at your parents' house, they couldn't arrest you for a DUI when your car is parked somewhere, obviously. But if you're in the general vicinity of it, I consider that to be physical control.

No further proof was offered after Trooper Childers' testimony. The trial court made its ruling from the bench immediately after the close of the proof stating as follows:

> THE COURT: All right. The Court's ready to rule. I've read everything that's been submitted to me.
>
> First of all, let me say I've known Mr. Childers, I don't know, how many years? A lot of years.
>
> MR. CHILDERS: Yes, sir.
>
> THE COURT: Extremely professional, outstanding law enforcement officer. And I am very glad that he took this man into custody rather than risk somebody being run over by someone that's obviously intoxicated driving 26,000 pounds, according to the lady. So I'm glad he did what he did, but we're here on legal issues.

- 4 -

Number one, let me get into the non-issues. Without question, this man was under the influence. I would go further and say he was intoxicated. Number two, I don't see the issue of this being private as truly an issue. I think there was sufficient interaction of the public among all these different drivers and everything, that they can't rely that this is some type of private parking lot.

As has been alluded, he could have arrested him for public intoxication, because he actually observed that misdemeanor, okay? But in this case, the Court finds that the officer did not see the defendant driving on Highway 57 or in the lot. He did not observe driving.

The Court also finds that he did not observe him in physical control of the motor vehicle. He says he was in the general vicinity, he probably had keys, but I think something more than that is necessary to establish physical control.

The pattern charge says the keys don't have to be in, doesn't even have to be capable of operation, but I think he would have had to be - - in order to be in physical control, he's got to be in the vehicle somewhere rather than on the outside.

So the Court finds that it's a misdemeanor that was not committed in his presence, and there is an exception if they're investigating an accident or something. That exception is not present in this case. So the Court finds that the Motion to Suppress based upon improper arrest is hereby sustained by the Court.

**Analysis**

Defendant's motion to suppress evidence comprises nine pages in small print. It is mostly a memorandum of law on multiple legal theories to suppress evidence with various allegations of facts involved in this case. Generally, the motion asserts that Defendant was unconstitutionally searched and arrested without a search warrant or arrest warrant having first been issued. He asserts that law enforcement unconstitutionally entered the premises of PCA without a search warrant or an arrest warrant and that no exception to the search warrant or arrest warrant requirement existed. Defendant also alludes to an assertion that there was no probable cause existing for Defendant's arrest or for searching Defendant or his truck. In addition, Defendant included in his motion to suppress allegations that the breath alcohol test results, obtained at the jail, should be suppressed. That particular issue was reserved by the trial court to be addressed later, if necessary.

The trial court explicitly in some matters, and implicitly in other matters, denied the motion to suppress on all grounds except (1) challenges to the procedure in obtaining the breath test results at the jail (which was reserved) and (2) the challenge to an unlawful warrantless arrest for a misdemeanor not committed in the presence of the law enforcement officer.

The trial court explicitly made factual findings that at the time Defendant was at PCA, he was intoxicated and that the premises of PCA meet the DUI statutory requirement as an area that is "generally frequented by the public at large." Those findings of fact are clearly supported by the evidence. The trial court implicitly accredited the proof that Defendant was near his truck when Trooper Childers arrived, and that Defendant "probably had [his] keys." The trial court did not explicitly make any findings that Defendant's truck was operational at the time Trooper Childers arrived, but we deem this omission to be insignificant. All of the evidence conclusively showed that Defendant had driven the truck from the highway into the premises of PCA, to the scale/guard house and then to the unbinding rack where it was located when Trooper Childers arrived approximately twenty-five to thirty minutes later. The trial court explicitly ruled that Defendant was not in physical control of the vehicle at the time of his warrantless arrest for the misdemeanor offense of DUI. Thus, the sole issue for determination by this court is whether the trial court erred by granting the motion to suppress based upon an unlawful warrantless arrest.

*Standard of Review*

On appeal from the granting of a motion to suppress, we defer to the trial court's findings of fact unless the evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996). The "credibility of the witnesses, the weight and value of the evidence, and [the] resolution of conflicts in the evidence are matters entrusted to the trial court as the trier of fact." *Id*. The prevailing party in the trial court is afforded "the strongest legitimate view of the evidence . . . as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Id*.

*Application of Law to the Facts*

As applicable in this case, Tennessee Code Annotated section 55-10-401 provides that:

> It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

- 6 -

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess;

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]

Tenn. Code Ann. § 55-10-401(1)-(2).

With certain exceptions not applicable in Defendant's case, a law enforcement officer is statutorily prohibited from making a warrantless arrest for a misdemeanor offense not committed in the officer's presence. Tenn. Code Ann. § 40-7-103. Evidence obtained as a result of an unlawful warrantless arrest in violation of Tennessee Code Annotated section 40-7-103 is subject to being suppressed and inadmissible. *State v. Walker,* 12 S.W.3d 460, 467 (Tenn. 2000)*; State v. Clark,* 844 S.W.2d 597, 600 (Tenn. 1992)*.* Despite the fact that Defendant asserted in his motion to suppress that he was unlawfully arrested in contravention of Tennessee Code Annotated section 40-7-103, the State neglected to address this ground for relief in its memorandum of law filed in the trial court. Proof at the hearing was elicited establishing that there was probable cause for Trooper Childers to arrest Defendant for public intoxication, a misdemeanor committed in the officer's presence. However, the State never asserted in the trial court, in writing or in open court, that the motion to suppress should be denied because Trooper Childers *could* have arrested Defendant without a warrant for public intoxication. The State argues this theory for the first time on appeal. It is waived. *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996).

Furthermore, the State similarly argues another theory raised for the first time on appeal, that Defendant could have been lawfully arrested without a warrant for the handgun offense. For the same reason that the "public intoxication" argument is waived, this argument is also waived. *Johnson*, 970 S.W.2d at 508.

At oral argument in this case, the court suggested to the parties that they should review our supreme court's decision in *State v. Butler*, 108 S.W.3d 845 (Tenn. 2003). The *Butler* decision was not mentioned in either party's briefing. The court also announced at oral argument that after review of *Butler* each party had the opportunity to file a supplemental brief to rely upon or distinguish *Butler* in the case *sub judice*. Curiously, despite the suggestion from the court and the court allowing supplemental briefing to address Defendant's case in light of *Butler*, both parties filed notices declining to address the issue on appeal in light of *Butler*. Not surprisingly, we rely on *Butler*, and

we also conclude that the opinion in *Butler* guides our analysis. We reverse the judgment of the trial court.

*Butler* is not a case that deals with a motion to suppress in a DUI case where a warrantless arrest is made and the State's theory of guilt is based *solely* upon a defendant's being in physical control of a motor vehicle. However, the *Butler* opinion does clearly define circumstances where the evidence was sufficient to sustain the DUI defendant's guilt based upon being in physical control of his motor vehicle, a motorcycle. Those circumstances are similar to the facts in the case *sub judice*, and under the test outlined in *Butler*, we hold that Defendant was clearly intoxicated and in physical control of his vehicle in Trooper Childers' presence.

In *Butler*, an off-duty Madison County Deputy Sheriff, who at the time of the defendant's arrest was working as a security guard for a Walmart store in Jackson, investigated a citizen's information that an apparently intoxicated man was wandering around the store's parking lot. The deputy confronted the defendant outside the store approximately one hundred yards from the defendant's motorcycle. The intoxicated defendant explained that he had driven to Walmart in order to obtain a part, later determined to be a sparkplug, for his motorcycle. The deputy escorted the defendant inside the store and conducted four field sobriety tests. The deputy observed the defendant perform poorly on three of the tests, and at that point arrested defendant, obviously without a warrant, for DUI. The deputy testified "that he never actually witnessed the defendant on the motorcycle." *Butler*, 108 S.W.3d at 847.

Following his conviction, the defendant appealed, arguing the evidence was insufficient to support his conviction because the State failed to establish proof beyond a reasonable doubt that he drove his motorcycle or was in physical control of his motorcycle while intoxicated. Our supreme court held that the evidence was sufficient to support his conviction under both driving the motorcycle and separately being in physical control of the motorcycle. *Id*. at 849. As to the proof supporting the defendant's guilt based upon driving the motorcycle while intoxicated, the Court ruled that circumstantial evidence clearly proved that theory. *Id*. at 850.

Relevant to the case *sub judice*, the Court in *Butler* relied upon its decision in *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993). *Id*. In *Lawrence*, the court adopted a totality of the circumstances test for the purpose of determining whether a person is in physical control of a vehicle while intoxicated. *Lawrence*, 849 S.W.2d at 765 (cited in *Butler*, 108 S.W.3d at 850). It is made clear that all circumstances should be taken into consideration, and relevant factors to consider are:

> (1) the defendant's location in relation to the motor vehicle;

> (2) the location of the vehicle's ignition key;

(3) whether the motor is running;

(4) the defendant's ability, but for the defendant's intoxication, to direct the use, or the non-use, of the vehicle;

(5) the extent to which the vehicle is capable of being moved or operated under its own power or otherwise.

*Butler*, 108 S.W.3d at 850.

In *Butler*, the Tennessee Supreme Court held that the evidence in that case was sufficient to establish beyond a reasonable doubt that the defendant was in physical control of his vehicle (a motorcycle) while intoxicated on a premises (Walmart parking lot) frequented by the public at large. In *Butler*, our supreme court examined the five factors and determined that the defendant "was in reasonably close proximity," *Id*. at 851, of his motorcycle, which was one hundred yards from the defendant, when he was apprehended by the law enforcement officer. The key was in the motorcycle's ignition. Although the motorcycle's motor was not running (defendant had removed the sparkplug and evidence showed the engine cylinder was flooded), the fourth and fifth factors weighed against the defendant. In an intoxicated condition, the defendant had just removed the sparkplug, and a mechanic who worked on defendant's motorcycle after his arrest testified that the flooded engine cylinder could have been caused by attempting to start the engine without the sparkplug. Thus the defendant, even in his intoxicated condition, could direct the use of the motorcycle. Even though the motorcycle's sparkplug was removed and the engine was flooded, our supreme court held that since the motorcycle was in its condition because of the defendant's choice, the fifth factor also weighed against the defendant. *See Butler*, *Id*. at 850-52.

Examining the factors in the case *sub judice*, we note that when Trooper Childers arrived, Defendant was located next to his truck, *much* closer than the one hundred yards in *Butler*. The evidence shows that Defendant drove to the unbinding rack and got out of his truck to unbind his load when he was told by security and a PCA employee to stop and get back into his truck to sober up. He later got out again to just unbind the load. He was told to stand next to Ms. Spears while she waited for law enforcement to arrive. The trial court stated Defendant probably had his ignition key. All the circumstantial evidence overwhelmingly points to the conclusion that the ignition key was in the truck's ignition, in Defendant's actual possession, or inside Defendant's truck in Defendant's constructive possession. The record is silent as to whether the truck's motor was running, but as noted in *Butler*, "it has long been the law in this state that a driving under the influence conviction based upon physical control does not hinge on whether the vehicle's engine is running or whether the vehicle is in motion." *Id*. at 851. Clearly, defendant had the ability, but for his intoxication, to direct the use or non-use of the truck. If Ms. Spears

and the PCA foreman had not intervened, Defendant could have continued to drive his truck.  Finally, the evidence was overwhelming that the truck was operable.

Considering all the applicable factors, it is clear that the offense of DUI was committed in the presence of Trooper Childers.  If the evidence in *Butler* was sufficient to establish that defendant's guilt of DUI by physical control beyond a reasonable doubt, then the evidence in the case *sub judice* is certainly sufficient to establish probable cause that Defendant committed DUI by physical control, and it was committed in the presence of Trooper Childers.

## CONCLUSION

The judgment of the trial court is reversed, the indictment is reinstated, and the motion to suppress is denied, except for the portion reserved at the trial court hearing as to the procedure involved in taking the breath alcohol test, and this case is remanded to the trial court for further proceedings consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE