IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 12, 2024

**STATE OF TENNESSEE v. WILLIAM PAUL CLIMER**

**Appeal from the Circuit Court for Dyer County**
**No. 22-CR-292     Mark L. Hayes, Judge**
_____

**No. W2024-00023-CCA-R3-CD**
_____

The defendant, William Paul Climer, was indicted by the Dyer County Grand Jury for one count of aggravated kidnapping and two counts of aggravated assault. On September 8, 2023, the defendant pled guilty to one count of aggravated assault. Per the terms of his plea agreement, the defendant agreed to be sentenced as a Range II, multiple offender with the length and manner of service to be determined by the trial court. Additionally, the State agreed to dismiss the aggravated kidnapping charge and the second count of aggravated assault. After a sentencing hearing, the trial court sentenced the defendant to a term of six years' incarceration and imposed a fine of $2500. On appeal, the defendant contends the trial court erred in denying alternative sentencing and in imposing a fine without making the appropriate findings. Upon our review of the record, the parties' briefs, and the applicable law, we affirm the trial court's denial of alternative sentencing; however, the trial court failed to make the appropriate findings concerning the imposition of the $2500 fine, and therefore, we remand the matter to the trial court to determine if a fine is appropriate and make such findings as necessary.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded.**

J. Ross Dyer, J., delivered the opinion of the court, in which Robert L. Holloway, Jr., and Matthew J. Wilson, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Franklin, Tennessee, (on appeal); and Patrick McGill, Assistant Public Defender, Dyersburg, Tennessee (at trial), for the appellant, William Paul Climer.

Jonathan Skrmetti, Attorney General and Reporter; Elizabeth Evan, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts and Procedural History*

**Plea Hearing:**

On September 8, 2023, the defendant plead guilty to one count of aggravated assault. The facts underlying the plea, as explained by the State, were as follows:

> The proof would be if he [had gone] to trial, from the officers, would be that on July 2nd, 2022, 911 received what they call an open call, or an open line, where 911 was called, but nobody said anything. They could hear a lot of screaming and yelling in the background, so they dispatched officers out there. It took them some time to find the area on McGaughey Street, but they were able to get to 5 -- , not 520 -- I think it was 528 McGaughey Street, which was [the defendant's] residence. His wife, Kate Climer, had also lived at the residence, but I think at that point, they were beginning the early stages of going through a divorce; and when Officers Davidson and Pursell got there, they heard a lot of yelling. And in the open line, they did hear the discussion of a knife, so they were concerned. They did get into the back yard. Officer Davidson did open the door. He would testify that he visually saw [the defendant] with a long knife pointed towards Ms. Climer's stomach. He told [the defendant] to drop the knife, and [the defendant] thankfully did immediately, which preserved M[s]. Climer. At that point, Ms. Climer ran out. They took her to the hospital for evaluation, and after about another hour or so, there was a standoff basically. The SRT Team was called in, and thankfully there were no significant injuries, and [the defendant] did come out safely.

After questioning the defendant, the trial court found that there was a factual basis to support the defendant's plea and that the defendant's plea was knowingly and voluntarily entered.

**Sentencing Hearing:**

On November 28, 2023, the trial court convened a sentencing hearing. During the hearing, the State introduced the presentence investigation report. The report revealed that the defendant had three prior convictions for domestic violence—two against the victim in the instant matter and one against another ex-wife—and one conviction for aggravated assault against the victim in the instant matter. In each case, the defendant was placed on

and completed probation. Additionally, the defendant's Strong-R Assessment classified the defendant as a moderate risk level to reoffend.

Officer Chris Pursell of Dyersburg Police Department testified he responded to the "open line" 911 call. Over the open line, he could hear a female pleading for help and "telling someone to stop." According to Officer Pursell, the area was a dense residential area with a small apartment complex and numerous houses, and they were initially unable to pinpoint the location of the 911 call. However, after a search of the area, Officer Pursell and his partner, Officer David Davidson, found the victim and the defendant in a shed on the defendant's property. Officer Pursell stated that the incident resulted in a four to four-and half-hour standoff that included SWAT, negotiators, a chaplain, and EMS. Finally, when asked if violent crime was on the increase in Dyersburg, Officer Pursell testified, "it's obvious to me."

On cross-examination, Officer Pursell acknowledged he was familiar with the phrase—"race to the phone." According to Officer Pursell, the phrase means that whoever calls 911 first gets to be the "good guy." However, he also testified that the person on the phone is not always the "good guy."

The victim, Kate Climer, testified that she used to be married to the defendant. According to the victim, this was not the first time the defendant had assaulted her. Ms. Climer testified that the defendant assaulted her on two prior occasions—March 2017 and October 2017. The defendant was placed on probation both times. Concerning the assault in the instant matter, the victim testified that the defendant threatened to kill her twenty-five times that morning. He choked her multiple times causing her to lose consciousness, fall, bust her lip, and break a tooth. The defendant also held a long knife to the victim's neck, cutting her at least once. After the victim was able to escape the defendant, she was transported to the hospital to have her neck and back examined. The hospital visit cost the victim $3,981. According to the victim, she still has problems with her neck as a result of the defendant's assault.

After the July 2022 assault, the victim moved; however, she claimed to have seen the defendant's vehicles near her new house on two separate occasions. Because of this, the victim fears being outside and is afraid to bring her grandchildren to her new home, fearing the defendant might show up. She also testified that she is afraid to be out at night and even pays co-workers to watch her get in her car and leave work at night.

The defendant testified that he is sixty-six years old and that all the information contained in the presentence report was accurate. According to the defendant, he was not trying to harm the victim on July 2, 2022; rather, he was trying to take his own life. The defendant also claimed that he started using drugs when he met the victim and that she was

his drug dealer. However, since the assault, the defendant has stopped using drugs and sought treatment.

Concerning the events surrounding the instant assault, the defendant testified that the victim was not living with him at the time. They had been arguing on the phone all night, and when he stopped answering his phone, the victim just showed up at his house. The defendant claimed that victim was doing methamphetamine that morning when she arrived at the defendant's house. The defendant then told the victim that he was going to kill himself in front of her and make her watch. According to the defendant, he was abused by the victim for years. He claimed that "he had a great life before her" and that "she's no angel." The defendant also claimed the victim and her ex-husband stole everything from his house after he was arrested. According to the defendant, he regretted his actions and just wanted to move to Oklahoma to be with his grandchildren.

On cross-examination, the defendant admitted that he blamed the victim "for some and some was my fault." He also claimed that the October 2017 assault was not an assault; rather, the victim simply "tripped over a board in my house." When asked if he had assaulted two of his ex-wives, the defendant responded, "Allegedly." Finally, the defendant claimed that he was not holding the victim hostage that day but was holding himself hostage.

At the conclusion of the hearing, the trial court noted that it "had considered evidence presented today at the sentencing hearing, carefully reviewed the presentence report, considered the principles of sentencing, arguments that have been made, the nature and the characteristics of criminal conduct involved, information offered on mitigating and enhancing factors, the statistical information provided by the Administrative [O]ffice of the Courts as to sentencing practices for similar offenses in Tennessee, statements of the defendant on his own behalf." The trial court also noted it had reviewed the validated Risk and Needs Assessment and considered the defendant's potential for rehabilitation for treatment. The trial court found enhancement factors (8), the defendant before trial or sentencing has failed to comply with the conditions of the sentence involving release in the community, and (10), the defendant had no hesitation about committing the crime when the risk to human life was high, applicable to the defendant. The trial court found no mitigating factors applicable.

When considering alternatives to incarceration, the trial court stated that "it's been a difficult task here because there are only two extremes available. One is 6 to 10 years with a best-case scenario of 85 percent, or something up to one year, and one year is the maximum I've got if give an alternative sentence." The trial court then noted that the "prior criminal history of the defendant -- a serious problem, somehow, with domestic partners" and that "measures less restrictive than confinement have been applied unsuccessfully to

the defendant, I would say recently, relatively recently there." Based on this, the trial court found that a sentence of full probation would unduly depreciate the seriousness of the offense.

In addressing the defendant's claim that he was taking responsibility for his actions, the trial court noted that the defendant "spent the majority of his time on the witness stand blaming the victim for his actions, including drugs, texts, her coming to the property, her abuse of him, and the fact that he had a great life before her." The trial court then rejected "the defendant's statement that he accepts responsibility for his offense in this matter."

Finally, the trial court found confinement was necessary to protect society by restraining the defendant, who has a long history of criminal conduct. More specifically, the trial court found that "the recent cases, in terms of space and time, it's not a lengthy checklist, but he has a long history of conducting himself in this same manner, and that is disturbing to the Court. Assaults spanning 11 years involving family,-- I mean that's his thing." Accordingly, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and that measures less restrictive than confinement have been applied unsuccessfully to the defendant, noting the defendant received probation in 2018 for an assault conviction "and yet, here we are back again with another offense."

Based on those considerations, the trial court sentenced the defendant to a term of six years with the Tennessee Department of Correction and imposed a fine in the amount of $2500.

This timely appeal followed.

### *Analysis*

## A. Alternative Sentencing

In this appeal, the defendant argues the trial court erred when it ordered him to serve his six-year sentence in custody instead of granting an alternative sentence to incarceration. Specifically, he contends the trial court failed to consider the defendant's potential for rehabilitation and "made an erroneous assessment of the proof with regard to his amenability to correction. We respectfully disagree.

Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This

standard of appellate review applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). As the supreme court has clarified, "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014).

In this context, "this deferential standard of review is subject to an important caveat: the trial court must 'place on the record any reason for a particular sentence.'" *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (quoting *Bise*, 380 S.W.3d at 705), *no perm. app. filed*. After all, "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 706 n.41.

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison County*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and the punishment imposed should fit the offender as well as the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Pursuant to Tennessee Code Annotated section 40-35-103(1) (2019), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A) whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B) whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C) whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]"

And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5) (2019).

Even if a defendant is eligible for probation, the burden of establishing suitability for probation rests with the defendant. *See* Tenn. Code Ann. § 40-35-303(b). This burden also includes showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008). To that end, when considering whether a defendant has met this burden, the trial court should consider "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*.

In this case, the trial court ordered the defendant's sentence be served in confinement in the Tennessee Department of Correction. In so doing, the trial court stated that it had considered the presentence investigation report, the risk and needs assessment, and the proof introduced at the sentencing hearing. Further, it considered the facts and circumstances surrounding the offenses, the nature of the criminal conduct involved in the case, and the need for deterrence. Finally, the court considered the defendant's criminal history, potential for rehabilitation, and allocution.

Considering this information and the factors set forth in Tennessee Code Annotated section 40-35-103, the trial court emphasized that the defendant had committed multiple domestic/assaultive offenses against the victim in the instant matter as well as against another ex-wife. Additionally, the trial court expressed great concern with the fact that the defendant had been place on probation for his prior domestic convictions yet noted "here we are back again with another offense." Finally, the trial court considered the defendant's refusal to accept responsibility for his actions, the fact that he blamed the victim for his actions, and that he was at a moderate risk of reoffending.

We conclude that the trial court acted within its discretion in imposing a sentence of incarceration. The trial court identified the correct standards of law that applied to its consideration of alternative sentencing. It considered and weighed the purposes and principles of sentencing, as well as the appropriate statutory and common-law factors for alternative sentencing. It then made a reasoned choice between acceptable alternatives after considering the relevant facts on the record. Even if reasonable minds could disagree with the propriety of the decision to deny probation—and we have no such disagreement—we conclude that the trial court acted within its discretion to deny an alternative sentence and

impose a sentence of full incarceration. Because the trial court's sentence reflects a decision based upon the purposes and principles of sentencing, its decisions are entitled to a presumption of reasonableness. *See Caudle*, 388 S.W.3d at 279. Accordingly, we affirm the trial court's denial of alternative sentencing.

## B. Imposition of Fine

Next, the defendant contends that the trial court erred in imposing a $2500 fine. He insists the trial court failed to make the appropriate findings in support of the imposition of the fine and asks this Court to reverse the trial court's imposition of the fine and remand the matter for "further findings based upon the consideration of the relevant factors." Upon our review of the record, we agree with the defendant and remand the matter proceedings consistent with this opinion.

Our Tennessee constitution states, "No fine shall be laid on any citizen of this State that shall exceed fifty dollars, unless it shall be assessed by a jury of his peers, who shall assess the fine at the time they find the fact . . . ." Tenn. Const. art. VI, § 14; *see* Tenn. Code Ann. § 40-35-301(b) (2014). A "defendant may waive the right to have a jury fix the fine and agree that the court fix it, in which case the court may lawfully fix the fine at any amount that the jury could have." Tenn. Code Ann. § 40-35-301(b); *see State v. Sanders,* 735 S.W.2d 856, 858 (Tenn. Crim. App. 1987). Based on his conviction for aggravated assault, the defendant was subject to a fine not to exceed $15,000. *See* Tenn. Code Ann. § 39-13-102(e)(1)(B). Additionally, pursuant to Tennessee Code Annotated section 39-13-102(e)(2), "if the relationship between the defendant and the victim of the assault is such that the victim is a domestic abuse victim as defined in [Tenn. Code Ann. § 36-3-601," the trial court may impose an additional fine not to exceed $200.

The trial court's imposition of a fine must be based upon the factors provided in the statutory sentencing act, including "the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence." *State v. Taylor*, 70 S.W.3d 717, 723 (Tenn. 2002) (citation and quotation omitted). Although the defendant's ability to pay should be considered, it is not a controlling factor. *State v. Butler*, 108 S.W.3d 845, 854 (Tenn. 2003). The trial court "must also consider other factors, including prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors that are relevant to an appropriate, overall sentence." *Taylor*, 70 S.W.3d at 723 (citing *Blevins*, 968 S.W.2d at 895). "The seriousness of a conviction offense may also support a punitive fine." *Id.* (citing *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996)). This court reviews fines as part of the sentence. *See Taylor*, 70 S.W.3d at 722-23; *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1999). Accordingly, this Court reviews the fines imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness.

*See Bise*, 380 S.W.3d at 707; *State v. Shanklin*, No. W2019-01460-CCA-R3-CD, 2021 WL 3485939, at \*5 (Tenn. Crim. App. Oct. 6, 2020), *no perm. app. filed*.

Here, the trial court made no findings in imposing the fine of $2500. While the trial court made thorough findings supporting its decision to deny alternative sentencing, the trial court simply announced the fine with making any findings justifying the same. As a result, the trial court's decision is not entitled to a presumption of reasonableness, and we may not defer to the trial court's exercise of its discretionary authority. *See State v. Pollard*, 432 S.W.3d 851, 863-64 (Tenn. 2013). While this Court can conduct a de novo review and impose appropriate fines, the factors to be considered and weighed in imposing a fine require a fact-intensive inquiry. Furthermore, where the trial court fails to place on the record any reason for a particular sentencing decision, the most appropriate action is to remand the case to the trial court for reconsideration. *See Bise*, 380 S.W.3d at 705, n.41. Therefore, we reverse the trial court's imposition of a fine and remand for further findings based upon consideration of the relevant factors.

### *Conclusion*

We reverse the fine imposed by the trial court and remand for findings based upon the relevant factors. We otherwise affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE